WILLIAM C. BUSCH v. TIMOTHY NESTER, SPENCER O. FISHER, AND GEORGE L. BURTIS.

[See 62 Mich. 381; 64 Id. 336.]

*Replevin—Title to lands—Removal of timber—Evidence.*

1. It is difficult to see how, under the decisions of this Court, a judgment in a *personal* action can determine the title to lands. *Keyser v. Sutherland*, 59 Mich. 455.

2. In trespass, trover, or replevin for trees severed or coal mined or removed from *unoccupied* land by a trespasser, or by one not claiming title in *good faith*, which actions all courts admit the owner of the land may bring to recover the property or its value, the plaintiff may show his title to the land, which may be controverted by the defendant, who may even show title in a stranger; the object of such proof not being to determine who has such *legal* title, but who is the owner and entitled to the possession of the *personal* property, which latter question is alone determined by the decision.

3. The decision of the court in a replevin suit for logs cut from lands claimed by the plaintiff under tax deeds, that such deeds are invalid, eliminates from the case the question of conflicting titles to the lands, and defeats the plaintiff's recovery, his right to the possession of the logs being dependent upon the validity of his title to the lands from which they were taken.

4. Where a plaintiff and defendant are shown to own undivided interests in the logs replevied, the suit cannot be maintained.

5. In order to test the accuracy of a scale or estimate of the amount of logs cut from certain lands, made af er the logs had been removed, by a "stump and top measurement," so called, other like scales or estimates made by the same scaler on other lands may be shown and compared with the actual scale of the latter logs.

Error to Marquette.    (Grant, J.)    Argued May 11, 1888. Decided June 8, 1888.

Replevin.    Defendants bring error.    Reversed.    The facts are stated in the opinion.

*Ball & Hanscom (John Atkinson,* of counsel), for appellants.

*F. O. Clark (John A. Edget,* of counsel), for plaintiff.

CHAMPLIN, J.   On   September 16,   1885,   the plaintiff brought an action of replevin against the defendants.   The writ commanded the sheriff to take into his custody—

"About twelve hundred thousand feet of pine saw-logs, board measure, consisting mostly of white pine, and marked by the plaintiff, William C. Busch, with his mark, monogram B; also including in said amount logs so marked by said Busch and afterwards overmarked with IIII by Timothy Nester, one of the defendants, the total amount so overmarked being about 57,730 feet, board measure; also all logs marked 'H,' amounting to about 220,563 feet, board measure; also all logs marked 'W'* amounting to about 17,000 feet, board measure; said logs being intended to cover the logs got out by said William C. Busch in the winter of 1884 and 1885 on Huron river, or near thereto, and marked as above stated, and being intended to cover all the logs so marked being in the booms known as the 'George L. Burtis Boom,' and the boom at the Grace Furnace dock, near the mill of said George L. Burtis, in the city of Marquette, Marquette county, Michigan."

No question is made upon the execution of the writ by the sheriff.

On the trial it was shown that the logs were cut by the plaintiff upon lands in township 52 N., range 30 W.   Of these lands, at the time the cutting began, the W. ½ of section 26, and the S. ¼ of section 23, belonged to James B. Ross; the N. W. ¼ of the N. W. ¼ of section 35, and the N. ½ of N. W. ¼ of section 23, belonged, one undivided quarter to Ursula R. Smith, and the remaining undivided three-quarters to Philo Allen; and that the N. E. ¼ of section 23 belonged to Thomas M. McEntee.

---

* This letter was enclosed in a square.

December 1, 1884, the Ross lands were conveyed to D. H. Ball, and on December 30, 1884, Ross transferred to Ball all the logs that had been cut from the lands, and all right of action for cutting them.

July 25, 1885, Ball sold and assigned to Timothy Nester all the logs cut from the Ross lands, and all rights of action for cutting the same, and all rights arising to Ball from the intermingling of them with other logs. June 2, 1885, Ursula R. Smith sold to Nester and transferred to him all of her interest in the logs, cut from the Smith and Allen lands.

After this suit was begun, and on the first day of October, 1885, McEntee conveyed the N. E. ¼ of section 22, with all the logs which had been cut therefrom, and all his rights of action therefor, to Timothy Nester. Before the commencement of this suit, the plaintiff had purchased outstanding tax titles upon the N. ½ of the N. W. ¼ of section 23, and the N. W. ¼ of the N. W. ¼ of section 35; and there appears to be no question made that, so far as the undivided three-fourths of these parcels are concerned, he was the owner; and it was conceded by defendants that plaintiff had a bill of sale of Allen's interest in the logs. After the logs were put afloat in Huron river, they were run down to the mouth, and, in doing so, became intermingled with logs which Nester had put into the river during the same winter, and also with logs that plaintiff had put in from other lands.

By mutual agreement between Busch and Nester the logs were rafted indiscriminately at the mouth of the Huron, and towed to Marquette, where the plaintiff, Busch, intended to assort his logs from Nester's; but after the logs arrived there Nester claimed title to the whole, and refused to let Busch assort out or take away any logs. Afterwards, by stipulation, the plaintiff took from the logs in the booms at Marquette all the logs marked " TB " (called in the writ " Monogram B ") except 1,156,021 feet, and all the logs marked " H," except 39,224 feet. He then brought this suit. His title and right

to possession is based exclusively upon tax-titles; the tax deeds for the west half of section 26 bearing date not earlier than January 12, 1885. The suit has been twice tried. Upon the former trial the circuit judge directed a verdict for the plaintiff. He held that no personal action would lie to determine the title to lands as a basis of fixing title to the logs. The case will be found reported in *Busch v. Nester,* 62 Mich. 381 (28 N. W. Rep. 911).

The court in the present case ruled that all of the tax titles relied on by plaintiff were invalid, and conveyed no titles to the land. Upon the question of the plaintiff's right to maintain the action he charged the jury as follows:

"Now comes the question as to what were the rights of those parties; Mr. Busch having entered upon this land, or claiming to have entered, under his tax title, and cut off the timber in good faith. And as to this, gentlemen, I charge you that if you find that Mr. Busch, after acquiring his tax deed, had advice of counsel relative to his rights thereunder; if he believed such deed conveyed a paramount title to the land, and the right of entry thereon, and the right of possession thereof; that in reliance upon such advice, and acting upon such belief, he assumed the actual adverse possession thereof in good faith, under color of such title, intending permanently to occupy and hold the same,—then no inquiry can be made into the title of the timber cut and removed from such land after the actual assumption of such possession under the color of such title.

"As I said, the tax deed is made *prima facie* evidence of title; but that is not enough, as I read the decision of the Supreme Court. You must be able to find from the evidence in this case that the plaintiff, Busch, entered upon those lands, took adverse possession of them, such adverse possession as under the circumstances he could; that he did it in good faith, intending to hold the same; and if you find that he did so, then no inquiry can be made into the title to the timber that was cut therefrom. If he did not enter in good faith and hold adverse possession, then he is not entitled to recover; for the adjudication of the court is that this tax title is void. The reasons for this rule are apparent. As a rule, the title to real estate cannot be determined in a personal action; and when a party is in possession in good faith,

relying upon his title as a valid one, and in adverse possession of the land, the law will not permit the original owner of the fee of the land to test the title to that property in a personal action until he has determined the title to the real estate in an action of ejectment."

This portion of the charge raises the principal question in the case; and that question is whether the facts disclosed by the record afford a case for the application of the principle of law laid down by the court. Says Mr. Justice Field, in *Halleck v. Mixer*, 16 Cal. 579:

" The true rule is this: The plaintiff out of possession cannot sue for property severed from the freehold when the defendant is in possession of the premises from which the property was severed, holding them adversely, in good faith, under claim and color of title. In other words, the personal action cannot be made the means of litigating and determining the title to the real property as between conflicting claimants. But the rule does not exclude the proof of title on the part of the plaintiff in other cases, for it is, as we have already observed, upon such proof that the right of recovery rests. It is because the plaintiff owns the premises, or has the right to their possession, that he is entitled to the chattel which is severed; and that must, of course, be in the first instance established. A mere intruder or trespasser is in no position to raise the question of title with the owner so as to defeat the action."

The rule appears to be founded more upon the difference between local and transitory actions, and the effect accorded to judgments in personal actions in some courts, than to any inherent difficulty in determining the rights of the parties to the personal property in controversy. Such appears to be the main reason for the rule in Pennsylvania. The principle was carried to the extreme verge in *Powell v. Smith*, 2 Watts, 126, when it was held that replevin would not lie for property wrongfully severed and removed from a mill, which had passed to the purchaser under a foreclosure sale of a mortgage, it being the bolting cloth, mill spindle, etc. Gibson, C. J., referred to the previous decisions of the court, in which it was determined,—

"On principle and authority, that the right of property in a chattel, which has become such by severance from the freehold, cannot be determined in a transitory action by a trial of the title to the freehold, because the title to land might otherwise be tried out of the county."

He pertinently adds:

"The mind is staggered at this conclusion, but unnecessarily, by an apprehension that it would leave the plaintiff without a remedy."

The remedy he suggests is an action for mesne profits. This, in a majority of cases, would be equal to no remedy at all. If a personal action is brought for the purpose of determining conflicting titles to lands, there is no doubt it could not be maintained. But it is difficult to see how, under the decisions of this Court, a judgment in a personal action can determine the title to lands. *Keyser v. Sutherland*, 59 Mich. 455 (26 N. W. Rep. 865).

All courts admit that if trees are severed or coal mined and removed from unoccupied lands by a trespasser, or by one not claiming title in good faith, trespass, trover, or replevin may be brought by the owner of the land to recover its value or the property; and to recover he may show his title. The defendant in replevin may controvert the plaintiff's title; he may go further, and show title in a stranger. Wells, Rep. § 589. In such case there would be the trial of conflicting titles; but the object is not to determine who has the legal title to the land, but who is the owner of, and entitled to the possession of, the personal property. The decision determines the title and right of possession of the personal property in dispute, but it does not determine the title to the land. The court looks to the substance, and when it can see that the action is one to determine the right to the possession of personal property, and not to try conflicting titles to land, it will proceed with the investigation, and permit the respect-

ive parties to make out their case by the best testimony in their power.

This is not a case where a party claiming the title to the land from which the logs were severed brings replevin against a party in possession. It is the exact reverse. The party claiming title is in the possession of the logs, and a party claiming to have been in the possession of the land brings replevin. To establish his right he attempted to prove title, but the court held as matter of law that all the tax deeds introduced by the plaintiff for such purpose, and the sales upon which they were based, were invalid, and conveyed no titles to the land. When he so ruled there were no conflicting titles for the jury to try. Under the circumstance he had no right to wrest the possession of the logs from the true owner, for his right of possession depended upon the validity of his title to the lands from which they were taken. Had the plaintiff been in the possession of the logs, and Nester had brought replevin, then the fact that he cut them while in actual possession of the land under a *bona fide* claim of title adverse to the owner and others would have presented a very different question.

I do not concede the doctrine, however, that where the proof shows, as in this case, the pine standing upon the land is the principal, and very likely the only, value of consequence, a holder of a tax title may light down upon the land like the locusts of Egypt, and destroy all there is of value upon it, and then depart, leaving the land denuded of all that is valuable, and turn the owner over to his tardy action of ejectment, with its three trials, and, after judgment is finally secured, to his action for mesne profits. In most cases it would be a barren remedy for barren land not worth the taxes.

The testimony of Mr. Belanger, the plaintiff's witness, shows what kind of a good-faith holder of some of the tax-titles Mr. Busch was. He testified :

"The way I came to make that arrangement with him, Mr. Busch found out that I was cutting on the S. E. ¼ of section 23,—one of those pieces I had a tax title on,—and he sent me an order that it would be better to take his hammer, and put his mark on those logs than mine, on account of he was the owner of that land. A few days after, we met, and he told me I had better let that land go to him on account of the tax titles were not good for anything, and he was the owner of the original. So I let it go in good faith. Mr. Busch told me that the tax title was good for nothing, and he owned the original title. That is the way I came to give away that piece or description of land. It was the logs on those pieces of land that I let him have; the lumber at $4.25 a thousand, that I had marked 'H.' They were the N. W. ¼ of section 23, the E. ½ of the S. W. ¼ of section 23, and the N. W. ¼ of the N. W. ¼ of section 35."

Mr. Busch testified that he submitted his tax deeds to two attorneys, and they advised him that they were valid, and, believing the advice to be correct, he took possession. He further testified as follows:

"I don't think I ever claimed to be in possession of any other parcel of land there except the W. ½ of section 26. I just had the timber cut off from them, and that was all"

The tax title under which he claimed the west half of section 26 was declared void in *Ball v. Busch,* 64 Mich. 336 (31 N. W. Rep. 565), which has been decided since this case was before us on the former occasion. This Court said that the invalidity of the deeds appeared upon their face, and were properly rejected when offered in evidence at the trial as not being *prima facie* evidence of title. It is only fair to Mr. Busch, and to the attorneys with whom he advised, to say that the deeds were issued under the law of 1882, and which had been held constitutional and valid by a divided Court in a case arising in Marquette county; and that the advice appears to have been based upon that decision.

As to those logs which were cut upon sections 23 and 35, known as the "Smith and Allen Lands," the plaintiff and defendant owned undivided interests, and the plaintiff could

not maintain replevin for them.    The jury, under the instructions of the court, returned a verdict in favor of the plaintiff of three-fourths, and in favor of the defendant for one-fourth, of such logs.    The court instructed the jury that by the stipulation it was concluded that Nester was to have his one-fourth and Busch his three-fourths of these logs, so that the question how he held them was eliminated from the case.    The stipulation referred to says nothing about the undivided interests of Busch and Nester.    And further the learned judge seems to be laboring under the misapprehension that the stipulation was entered into, and the logs delivered to Mr. Burtis, after the replevin.    Mr. Busch testified that the logs were delivered to him under the stipulation mentioned before the commencement of this replevin suit.

The testimony as to the quantity of logs in feet, board measure, given by witnesses upon both sides of the case, was competent; and I think it was competent also to show the quantity which the witness L. C. Palmer made in scaling other lands of which plaintiff had actual scales in order to test his accuracy.    The measurements which he made were upon the land after the logs had been removed.    He measured the diameter of the stump, and the distance to the top left on the ground, and made proper allowance for the "jump." of the tree in falling, and also measured the diameter of the top.    Of course, this cannot be an accurate measurement, but only approximate.    It scales it all as merchantable lumber, when a scaler upon the ground scaling the log would make allowance for defects.    Some of the witnesses testified that these defects amounted to 30 per cent. of the whole quantity.    If this allowance were made in L. C. Palmer's measurement and estimate, it would quite nearly agree with what is claimed to be the actual scale.    It was shown that the defendants detained logs belonging to plaintiff, cut from his own land.    These were among the logs replevied, and he would be entitled to judgment therefor.

The judgment must be reversed, and a new trial ordered.

SHERWOOD, C. J., CAMPBELL and MORSE, JJ. concurred. LONG, J., did not sit.