THE LEHIGH ZINC AND IRON COMPANY, PLAINTIFF IN
ERROR, v. THE NEW JERSEY ZINC AND IRON COM-
PANY, DEFENDANT IN ERROR.

1. Under the decision of this court in *The New Jersey Zinc Co.* v. *The
Boston Franklinite Co.*, 2 *McCart.* 418, it must be regarded as settled
that the Sussex Zinc and Copper Mining and Manufacturing Com-
pany, by its deed dated March 18th, 1852, conveyed to the New Jer-
sey Zinc Company all the franklinite and iron ores which it owned in
the Mine Hill farm in Sussex county.
2. The deed from Samuel Fowler to the Sussex Zinc and Copper Mining
and Manufacturing Company, dated March 10th, 1848, and the con-
firmatory deed between the same parties, dated March ——, 1849, pur-
ported to convey to the grantee, *inter alia*, all the veins, *strata* and
masses of zinc ore in the Mine Hill farm, which, in the then state of
the arts and sciences, would be deemed reasonably fit to be mined for
zinc, and also all the franklinite and iron ores which did not exist in
such veins, *strata* or masses as were capable of being mined without in-
terfering with the veins, *strata* or masses of zinc ore aforesaid.
3. The deed from Samuel Fowler to James L. Curtis and Daniel H.
Curtis, trustees, dated December 13th, 1850, purported· to convey to
the grantees such veins, *strata* and masses of franklinite and iron ores
on the Mine Hill farm as were capable of being mined without inter-
fering with the veins, *strata* and masses of zinc ore which the grantor
had conveyed to the Sussex Zinc and Copper Mining and Manu-
facturing Company, as above stated.
4. Upon an issue whether certain ore had been taken from such a vein,
*stratum* or mass of ore as is ·described in the deed above mentioned
from Fowler to Curtis, or from a different vein, *stratum* or mass, it was
competent for a defendant, insisting that it had been taken from such
a vein, *stratum* or mass, to prove that the vein from which the ore in
suit was taken was, in 1848, usually called franklinite; that although
this vein was then known to contain certain compounds of zinc mixed
with franklinite, yet these were then worthless as zinc ore, and were
for that reason rejected by the New Jersey Zinc Company while it
held the plaintiff's title ; that of all the ore discovered in the Mine
Hill farm the only zinc ore then deemed commercially valuable was
the red zinc ore, which is scarcely found in the vein from which the
ore in suit was taken; that this vein was then available only as an
iron ore and did not become useful in the arts for the manufacture of
zinc until the discovery in 1866 of what is known as the lime process,
and that those holding the plaintiff's title had always acquiesced in
the occupation of this mine by those holding the defendant's title.

5. A judicial determination of a question of fact binds only the parties in the cause and their privies, and is not even evidential against others.

6. Trover will not lie at the suit of the owner of land against a person who severs and converts to his own use what was a part of the realty, such as timber, ores, &c., if at the time of severance the defendant was in adverse possession of the realty under a *bona fide* claim of title.

On error.

For the plaintiff in error, *Charles D. Thompson, Gilbert Collins* and *Richard Wayne Parker*.

For the defendant in error, *Thomas N. McCarter* and *John R. Emery*.

The opinion of the court was delivered by

DIXON, J. This was an action of trover brought to recover damages for the conversion of twenty-three car loads of ore, mined by the defendant in January, 1889, on a tract of land known as the Mine Hill farm, in the township of Hardyston and county of Sussex.

The plaintiff claimed title under several deeds, of which only three need be even partially recited. These are:

1. A deed from Samuel Fowler to the Sussex Zinc and Copper Mining and Manufacturing Company, dated March 10th, 1848, conveying in fee "all the zinc, copper, lead, silver and gold ores, and also all other metals or ores containing metals, *except the metal or ore called franklinite and iron ores when it exists separate from the zinc*, existing, found or to be found" on the Mine Hill farm, "together with full and absolute liberty, license, power and authority  *  *  *  to open, dig, sink, blast or make a pit or pits, shafts, levels, drains and troughs, and to search for, get and take up, work, win and dig all sorts of mines and minerals, veins or vein of zinc, copper, lead, silver, gold and all other ores or metals except the franklinite and iron ores as aforesaid, together with *  *  *  free ingress, egress and regress unto and upon the said premises for the purpose aforesaid.  *  *  *  To have

and to hold, in fee simple or in absolute ownership, all and every the zinc, copper, lead, silver, gold and other metals and ores, excepting the ore called franklinite, where it exists in a separate, distinct state from the zinc, which shall be found or gotten in, under or upon every or any of the said ground or premises."

2. A deed between the same parties, dated March ——, 1849, ratifying and confirming the before-mentioned deed and conveying all the rights and privileges therein named and granted.

3. A deed from the Sussex Zinc and Copper Mining and Manufacturing Company to the New Jersey Zinc Company, dated March 8th, 1852, conveying, in fee simple, "all the zinc and other ores, *except franklinite and iron ores*, found or to be found on * * * the Mine Hill farm, * * * together with full and absolute liberty, license, power and authority * * * to open, dig, sink, blast or make a pit or pits, shafts, levels, drains and sloughs, and to search for, get and take up, work, mine and dig all sorts of mines and minerals, veins or vein of zinc, copper, lead, silver, gold and all other ores or metals, except the franklinite and iron ores as herein provided, together, also, with * * * free ingress, egress and regress into and upon the said premises for the purpose aforesaid, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, * * * and also all the estate, right, title, interest, property, claim and demand whatsoever, as well in law as in equity, of the said parties of the first part, of, in and to the above-described premises, and every part and parcel thereof, with the appurtenances.   To have and to hold," &c.

Owing to the difference between the *exceptions* mentioned in the first and the third of the above deeds, that in the first being "except the metal or ore called franklinite and iron ores when it exists separate from the zinc," and that in the third being "except franklinite and iron ores," it has been claimed that the Sussex Zinc and Copper Mining and Manufacturing Company retained title to all the franklinite and

iron ores on the Mine Hill farm which were not *separate from the zinc.* But, in *The New Jersey Zinc Co.* v. *The Boston Franklinite Co.,* 2 *McCart.* 418, 438, this court decided that, by force of the clause in the third deed, which conveyed "all the estate, &c., of the parties of the first part of, in and to the above-described premises," the Sussex Zinc and Copper Mining and Manufacturing Company conveyed to the New Jersey Zinc Company all the franklinite and iron ores which it had in the tract, so that the exception in the third deed was no larger than that in the first. This decision was rendered upon a purely legal question, the construction of the deed upon its face, and as such is binding upon us. Moreover, it was rendered in a cause wherein the New Jersey Zinc Company was a party and the Sussex Zinc and Copper Mining and Manufacturing Company was either a party under a new name or was represented by a party owning whatever rights it had after making the above-mentioned deed, so that the decree in that cause became, as it were, a part of the conveyance itself, and, while it stands, that conveyance must be deemed to have transferred to the New Jersey Zinc Company all the estate and rights of the Sussex Zinc and Copper Mining and Manufacturing Company in the Mine Hill farm.

The plaintiff's title is derived from and embraces all the estate of the New Jersey Zinc Company.

The plaintiff insisted at the trial that the ore in suit was zinc ore, or at least had been dug from a vein which was not "separate from the zinc," and, having offered evidence tending to support this contention and to show conversion of the ore by the defendant, rested.

The defendant thereupon moved for a non-suit, upon three grounds—*first,* because no demand had been shown; *second,* because at best the plaintiff had proved title to only an undivided half of the ore; *third,* because the defendant was in actual, notorious, peaceable, exclusive and adverse possession of the mine from which the ore was taken, and therefore trover was not an appropriate remedy.

None of these grounds can be maintained. Demand and

refusal constitute only one of the methods of showing conversion. The plaintiff relied upon a different method, equally legal and efficacious. If the plaintiff made out title to only an undivided half of the ore, yet it did not appear that the defendant was entitled to the other half, and the only irregularity thus disclosed was the non-joinder of the plaintiff's co-tenant. Under section 37 of our Practice act the defendant could not object to this, for want of prior written notice of the objection. With respect to the third ground, it is enough to say that the plaintiff's testimony did not conclusively show an adverse possession by the defendant, and without this it is not claimed that trover is improper. Further attention will hereafter be given to the propriety of this remedy.

The motion to non-suit was legally refused.

The defendant then produced its title, by which it appeared that its claim rested upon a deed dated December 13th, 1850, made by Samuel Fowler to James L. Curtis and Daniel H. Curtis, trustees for the Franklinite Mining Company, conveying "all the reserved iron ore called franklinite and all the other reserved ores and metals not granted or conveyed to the Sussex Zinc and Copper Mining and Manufacturing Company" by the Fowler deeds above mentioned, "found or to be found in  *  *  *  the Mine Hill farm,  *  *  * together with full and absolute liberty, license, power and authority to open, dig, sink, blast or make a pit or pits, shafts, levels, drains and sloughs, and search for, get and take, work, win and dig the several ores of franklinite and iron and all other reserved ores on the premises aforesaid,  *  *  * together with free ingress, egress and regress into and upon the said premises for the purposes aforesaid.  *  *  *  To have and to hold in fee simple or in absolute ownership all the franklinite and all other ores or metals reserved in the deeds hereinbefore referred to or not granted by them *  *  *  which shall be found or gotten in, under or upon *  *  *  the said ground or premises,  *  *  *  unto the

said parties of the second part, their heirs, successors and assigns."

This deed, as well as the deeds above mentioned in the plaintiff's title, conveys real estate, a corporeal hereditament in fee simple. *Cullen* v. *Johnson,* 2 *Str.* 1142; *Stoughton* v. *Leigh,* 1 *Taunt.* 402; *Hartwell* v. *Camman,* 2 *Stock.* 128. They all clearly indicate a design to enable the grantees to pursue the business of mining, and to that end they must be construed as granting masses of ore *in situ,* distinct veins or *strata,* or distinct parts of a vein or *stratum,* which are capable of being mined. *Zinc Co.* v. *Franklinite Co.,* 2 *Beas.* 322. In the plaintiff's title, therefore, are all veins, *strata* or masses of zinc ore which are capable of being mined, and all veins, *strata* or masses of franklinite and iron ores, which are not "separate from the zinc," and are fit to be mined; in the defendant's title are only those veins, *strata* and masses of franklinite and iron ores which are "separate from the zinc" and are fit for mining.

The meaning of this phrase "separate from the zinc," as applied to franklinite, has given rise to some controversy. Franklinite is itself a compound of zinc, and therefore cannot exist chemically separated from zinc. As the parties to these deeds were dealing with ores, we think that the phrase meant "separate from zinc ore," and as by zinc ore is intended "a mineral body containing so much of the metal of zinc as to be worth smelting" (2 *Beas.* 346), we think the exception in the plaintiff's title should be so construed as to exclude from the title only those veins, *strata* or masses of franklinite or iron ores which can be mined without interfering with any veins, *strata* or masses of zinc ore in quantity and richness worth mining for zinc.

These deeds speak also with reference to the time of their execution, and are to be applied to their subject-matter now as they would have been applied then. If a specified vein, *stratum* or mass of franklinite or iron ore can be removed without interfering with any zinc ore which in quantity and richness was then worth mining for zinc, that franklinite or

iron ore would then, under our view of these deeds, have been excepted from the plaintiff's title, and, consequently, it must be excepted now. No advance in the arts and sciences can extend those grants over any portions of the Mine Hill farm which they would not at their date have been deemed to embrace by then applying to their terms and their subject-matter correct rules of construction. "*Contemporanea expositio est optima et fortissima in lege.* The best and surest mode of expounding an instrument is by referring to the time when, and the circumstances under which, it was made." *Broom's Leg. Max.* 300; *Zinc Co.* v. *Franklinite Co.*, 2 *Beas.* 342; *Shore* v. *Wilson*, 9 *Cl. & F.* 566.

Thus is presented the issue of fact which involves the rights of these parties. The title of the plaintiff being, in a sense, general, and that of the defendant particular only, the issue can be more readily stated in terms denoting the latter. Thus, if the ore in suit was taken from a vein, *stratum* or mass of franklinite or iron ore, without disturbing any vein, *stratum* or mass of zinc ore, which, in 1848, would have been reasonably deemed fit to mine for zinc, then the defendant had a right to remove it, otherwise not.

On this issue the defendant, at the trial, offered to prove that the vein from which the ore in suit was taken was, in 1848, usually called franklinite; that, although this vein was then known to contain certain compounds of zinc mixed with the franklinite, yet these were then worthless as zinc ore, and were, for that reason, rejected by the New Jersey Zinc Company while it held the plaintiff's title; that of all the ores hitherto discovered on the Mine Hill farm, the only zinc ore then deemed commercially valuable was the red oxide of zinc, or red zinc ore, which is scarcely found in the vein worked by the defendant; that this vein was then available only as an iron ore, and did not become useful in the arts, for the manufacture of zinc, until the discovery, in 1866, of what is known as the lime process, and that those holding the plaintiff's title have always acquiesced in the occupation of this

mine by those holding the defendants' title. These offers were severally and collectively overruled.

In this we think there was error. These propositions, if established, tended directly to support the defendant's side of the issue as it is above defined.

Testimony of this nature was received and considered in the Court of Chancery and this court in former litigation over these deeds (2 *Beas.* 322; 2 *McCart.* 418), for the purpose of enabling the courts to ascertain the subject-matter which the parties intended their deeds to convey.

But it is urged that this court, in *The New Jersey Zinc Co. v. The Boston Franklinite Co.,* 2 *McCart.* 418, adjudged the vein in dispute to be zinc ore, and so embraced in the plaintiff's title. Such was the determination in that case, but it was the determination of a question of fact. A decision of that character binds only the parties in the cause and their privies, and the present defendant stands in neither category. Against it, the decision is not conclusive, nor even evidential.

The defendant also offered to prove that, when it excavated the ore in suit, it was in open, peaceable, adverse and exclusive possession of the mine, under a *bona fide* claim of title to the realty, and insisted that, therefore, trover would not lie for the ore. This was overruled.

We have seen that the plaintiff's title was that of an owner of real estate in fee. It is well settled that such an owner can generally maintain trover against a person who severs and converts to his own use what was part of the realty, as timber, ores, &c. *Berry* v. *Heard, Cro. Car.* 242; *Player* v. *Roberts, W. Jones* 243; *Farrant* v. *Thompson,* 5 *Barn. & Ald.* 826; *Rowe* v. *Grenfel, Ry. & M.* 396; *Taylor* v. *Parry,* 1 *Man. & G.* 604; *Mooers* v. *Wait,* 3 *Wend.* 104; *Riley* v. *Boston Water Power Co.,* 11 *Cush.* 11; *Kircher* v. *Schalk,* 10 *Vroom* 335; *Forsyth* v. *Wells,* 41 *Pa. St.* 291; *Bain. M. & M.* 334.

But there is a considerable line of cases holding that if the defendant, at the time of severance, is in adverse possession of the realty under a *bona fide* claim of title, the thing severed

becomes his property, so that the owner of the land cannot maintain trover or replevin therefor, but must resort to his remedy for the possession of the land and mesne profits. *Mather* v. *Trinity Church*, 3 *Serg. & R.* 509 ; *Powell* v. *Smith*, 2 *Watts* 126 ; *National Transit Co.* v. *Weston*, 121 *Pa. St.* 485 ; *Brothers* v. *Hurdle*, 10 *Ired.* 490 ; *Branch* v. *Morrison*, 5 *Jones* 16 ; *S. C.*, 6 *Id.* 16 ; *Halleck* v. *Mixer*, 16 *Cal.* 574 ; *Page* v. *Fowler*, 28 *Id.* 605.

The reason given for these decisions is that, under the circumstances stated, the title to the realty is put directly in issue between the parties, and it is the policy of the law that such a direct issue should be tried in a local action, while great inconvenience would follow if it might be raised in transitory actions. So long as the owner is disseized by the adverse possession of another, he must resort to his legal remedy to recover the principal thing—the possession of the land—and he cannot be permitted to institute separate suits for every act of his adversary which is merely incidental to that possession. When he recovers possession by ejectment, then, in a single suit, he may recover also damages for all that he lost by being deprived of the possession.

The rule seems to rest upon sound principle, and to be practicable. We think it should be followed. Consequently, the offer of the defendant, to show actual, adverse possession of the mine under a claim of right, should have been allowed.

It is unnecessary to consider the other assignments of error.

The judgment below must be reversed, and a *venire de novo* awarded.

DEPUE, J. I concur in the judgment of reversal, but not for the reasons assigned in the opinion of Mr. Justice Dixon.

Both parties claim under Samuel Fowler. Neither claims title to the surface of the soil under which the ores are found.

Fowler, by a deed dated March 10th, 1848, conveyed to the Sussex Zinc and Copper Mining Company. This conveyance is the source of the plaintiff's title.

Subsequently, Fowler, by a deed dated March 13th, 1850,

conveyed to James L. Curtis and Daniel Curtis, trustees, under whom the defendants make title.

The description in Fowler's deed to the Sussex company, of March 10th, 1848, is as follows: "All the zinc, copper, lead, silver and gold ores, and. also all other metals or ores containing metals, except the metal or ore called franklinite, and iron ores, when it exists separate from the zinc, existing, found or to be found on either tract of land herein described" (one of these tracts being the tract known as Mine Hill), "together with full liberty to open, dig, get and take up, work, mine and dig all sorts of mines and mineral veins or vein of zinc, copper, lead, silver, gold and all other ores and metals excepting the franklinite and iron ores, as aforesaid. To have and to hold in fee simple, or in absolute ownership, all and every zinc, copper, lead, silver, gold and other metals and ores excepting the ore called franklinite, where it.exists in a separate and distinct state from the zinc, which shall be found or gotten from the premises described."

The description in Fowler's deed to James L. and Daniel Curtis, of March 13th, 1850, is as follows : "All the reserved iron ore called franklinite, and all the other reserved ores and metals not granted or conveyed to the Sussex company by deed executed by them, the said parties of the first part, on the 10th day of March, 1848."

There is no ambiguity or uncertainty in the description contained in the deed from Fowler to the Sussex company, that would justify resort to extraneous evidence. It was so held by Chancellor Green and by Mr. Justice Vredenburgh, in this court. *Zinc Co.* v. *Franklinite Co.,* 2 *Beas.* 329; 2 *McCart.* 444, 446, 447. The extrinsic evidence that was received in that case was received for the purpose of aiding in the construction of the deed of March, 1852, from the Sussex company to the New Jersey company. 2 *Beas.* 341, 342, 344; 2 *McCart.* 438, 439. The parties to the deed of 1848 contemplated the existence of franklinite in this vein in combination with zinc, and the grantor, in framing the reser-

vation, took the risk of that ore being "*found or gotten*" in a separate and distinct state from the zinc.

By the deed of March 10th, 1848, from Fowler to the Sussex company, "all the metals or ores containing metals" were conveyed to the Sussex company except the ore called franklinite, where it exists in a separate and distinct state from the zinc. If, in this vein, the franklinite is always found in combination with the zinc, there is nothing there to which the exception can apply. Neither contemporaneous nor extrinsic evidence can be permitted to control the language of a written instrument expressed in plain and unambiguous terms. As applied to this deed, the evidence offered by the defendants was properly excluded.

*Second.* The plaintiffs' title rests upon the deed of March, 1852, made by the Sussex company to the New Jersey company. The defendants do not claim title under the Sussex company. Their contention is that if the ore in question does not belong to them in virtue of the Curtis title, it is the property of the Sussex company, and hence they say that they are not answerable to the plaintiffs for taking it.

By a decree of this court, made in November, 1862, it was adjudged that the New Jersey Zinc Company acquired by their deed of March 8th, 1852, all the title the Sussex company acquired from Fowler by his deed of March 10th, 1848. *The New Jersey Zinc Co.* v. *The Boston Franklinite Co.*, 2 *McCart.* 418. If the record of that suit, with the decree therein, had been in evidence, it would have operated to vest in the plaintiffs all the title that passed from Fowler under his deed of March 10th, 1848.

The plaintiffs had the option to close all controversy on this part of the case by putting the record in evidence or to rely upon the deed from the Sussex company, of March, 1852, as a conveyance, leaving the construction and legal effect of that deed to be determined at the trial. The record was offered in evidence by the plaintiffs' counsel and excluded. It does, therefore, not appear in the case.

The description in the deed from the Sussex company to

the New Jersey company is as follows : "All the zinc and other ores except franklinite and iron ores" found or to be found upon the described premises. There is a marked difference between the language of the description of the thing granted, as contained in the Fowler deed to the Sussex company, and the description of the thing granted by the Sussex company in the deed of March, 1852. Under the deed from Fowler the Sussex company took all the ores in the vein except the ore called franklinite, where it existed in a separate and distinct state from the zinc. By their deed to the New Jersey company the Sussex company conveyed specifically the zinc and other ores in the vein, reserving franklinite and iron ores. Chancellor Green, in his opinion in the case already referred to, used this language : " The distinction in the effect, as well as in the terms of the two deeds, is too clear to admit of controversy. In the one, the exception extends only to the franklinite and iron ores *when it exists separate from the zinc ;* in the other, all the franklinite and iron ores are excepted. By the one, all the franklinite and iron ores found in mechanical combination with the zinc passes to the grantee ; in the other they do not." 2 *Beas.* 330. Further on in his opinion the learned Chancellor (speaking of the deed of 1852) said : " By 'zinc ores' was meant those veins or lodes in which the ore of zinc was the predominating ore, and by ' franklinite' not the pure mineral of that name, which was never found except in small and detached specimens, but those veins or lodes in which franklinite predominated, and which was known and designated as franklinite ore." It was with reference to this deed that the Chancellor said that " the instrument must be construed according to the mind and intent of the parties at the time it was executed. * * * The question is not what is the scientific import of the terms, but in what sense the parties to the contract understood and used them." 2 *Beas.* 344 ; see, also, pp. 341, 342. Mr. Justice Vredenburgh, in this court, while he affirmed that there was no possible ambiguity in the exception in the words of grant, in the deed of 1848, after reading the exception as

defined and emphasized in the *habendum* (2 *McCart.* 444–447), justified the admission of extrinsic evidence in the construction of the deed of 1852 on the ground of ambiguity in its description.  *Id.* 438, 439–445.

If the record and decree in the former suit had been in evidence, by settled legal principles the decree would have been conclusive, whether it were right or wrong, and would have operated to transfer to the New Jersey company whatever title the Sussex company retained in the premises under the deed of 1852, leaving the rights of these parties to be determined upon the form and effect of the deed of 1848. But neither this court nor these defendants are bound by the findings of facts or the legal rules expressed by the court in its opinion, unless they be embodied in a decree or judgment. And I desire to record my dissent from that canon of construction that seems to have been adopted in this court, that the words " estate " and " premises " in the usual clause following the description of the thing granted, " together with," &c., will enlarge the extent of the grant as expressed in the descriptive words of grant.

*Third.* I think trover was the proper form of action.  The ore in question had been taken by the defendants from this vein.  It had been loaded on cars and put in the course of transportation to the defendants' works in Pennsylvania.  I also think trover would be the proper form of action under all circumstances.  Chancellor Green held that a deed for a mine, with mining privileges, created an estate in the land for which ejectment would lie, and which was subject to dower. But it will be observed that in that case it was admitted on the record, and found as a fact by the court, that the ore throughout the entire vein was uniform in kind.  I apprehend embarrassment, if not serious difficulty, in testing the title of these parties in an action of ejectment under our practice and procedure.  Neither party has, by force of their title deeds, title to the entire product of the mine.  The defendants have title to the franklinite in this vein, where it exists in a separate and distinct state from the zinc, wherever in the

vein it may be found or gotten.   The plaintiffs are entitled to
all the other ores.   By the Ejectment act the plaintiff is re-
quired to describe the premises with such certainty as will
distinctly apprise the defendant of their description and situa-
tion, so that from such description possession thereof may be
delivered ; and the judgment recovered is made conclusive as
to the right of possession and the title.   *Rev., pp.* 326–332.
The burden of proof is on the plaintiff.   In cases, as in the
present case, where the party is not entitled to the entire
product, *eo nomine,* of the mine, it may be difficult to prove
the character of the contents of the entire vein ; and it may
be that after judgment recovered, which ·by statute is made
conclusive as to title and right of possession, further explora-
tions may disclose ores within the vein which of right belong
to the other party.

The precedents are numerous of actions of trover by the
owner of lands for the conversion of things severed from the
realty, which in their natural state were part of the realty
itself, as timber, ores, &c.   Some of the cases of that aspect
are cited in the opinion of Mr. Justice Dixon.   Many of
these decisions were made by the English courts long anterior
to the separation of the colonies from the mother country, and
were part of the common law of England by which the courts
of this state profess to be governed.   I see no reason for dis-
carding this common law doctrine at this time.   As already
intimated, I find cogent reasons for adhering to it in cases
circumstanced like the present.   No embarrassments can
arise by reason of the form of action.   If the defendants have
acquired title to the entire mass of ore in the vein by adverse
possession, title by adverse possession may be set up with the
same facility as title by grant or by bill of sale.

BEASLEY, CHIEF JUSTICE.   In my opinion, upon the
plaintiff's own showing, it should have been non-suited.   As
I read the evidence, the defendant was, and for many years
had been, in the undisturbed and unquestioned possession,
claiming *bona fide* as owner of the mine from which the ores

in dispute were taken, and the title to the ores depended entirely on the title to the mine. Under such a condition of things, I think an action of trover will not lie.

On this ground I shall vote to reverse this judgment, expressing no opinion on any other of the questions raised.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, GARRISON, REED, VAN SYCKEL, BOGERT, BROWN, CLEMENT, SMITH. 11.