**JOHNSON et al. v. C. & N. W. SAND & GRAVEL CO. et al.**

(Circuit Court of Appeals, Seventh Circuit.    April 16, 1897.)

No. 435.

1. TRESPASS—DAMAGES TO THE FREEHOLD.

An action of trespass, or trespass on the case, to recover damages for injury to the freehold, or for severance and conversion of a portion of the freehold, cannot be maintained by the true owner, out of possession, against one in open, notorious, exclusive, adverse, and hostile possession, claiming under color of title.

2. SAME—TITLE.

In an action of trespass, or trespass on the case, the courts are not at liberty to try the title to land, and therefore cannot decree that the possession of the defendant has ripened into a perfect title.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

The plaintiffs in error, deriving title as heirs at law of Francis Johnson, deceased, on September 18, 1893, filed their praecipe for a summons in a plea of trespass, to recover certain sand and gravel taken from their lands by the defendants in error, and by them converted to their use. In 1858 Francis Johnson acquired title, through mesne conveyances from the government, to sections 26, 27, 34, and 35 in town 46 N., of range 12 E. of the third P. M., Lake county, Ill.,—four miles northeast of the city of Waukegan. Section 26 has a frontage of one-quarter of a mile, and section 35, which lies immediately south of section 26, a frontage of one-half mile, on Lake Michigan. Sections 27 and 34 do not reach to the lake. Francis Johnson died intestate in August, 1860, leaving the plaintiffs in error (and a daughter, who afterwards, and before this suit, died unmarried, intestate, leaving no descendants), his only heirs at law. The premises in question had never been actually possessed by Francis Johnson, or by any of his heirs, up to the time that the grantors of the defendants in error took possession. As hereafter stated, the lands were unoccupied and unfenced. There were no buildings upon them. They were not fit for cultivation, being mainly sand and gravel washed up from the lake, and in small part swamp-grass land, with a little scrub-oak timber, fit only for firewood. On September 30, 1892, the plaintiffs in error conveyed their respective interests in these lands to James B. Hobbs. The deed contained a recital that it should not be construed to have the effect to transfer to the grantee any claim or right of action that the grantors, or either of them, had against any corporation or person for rents and profits of the premises prior to August 25, 1892, or any claim or right of action for waste upon the premises, or damage for injury thereto by taking and carrying away sand and gravel, or otherwise, prior to August 28, 1892. The original declaration contained two counts in trespass. On September 9, 1895, an amended declaration was filed, containing two counts, the first of which, after stating that the plaintiffs were seised in fee of the premises on the 1st day of November, 1888, charged that on that day, and on each day thereafter until October 1, 1892, the defendants entered upon the said premises, "and then and there, with a large force of men, with tools, rakes, shovels, wheelbarrows, and other instruments, and machinery, tramways, and cars moved by hand, with animal power, and steam engines, took and carried away large quantities of said sand and gravel, to wit, ten carloads each and every day, the property of the plaintiffs, being then and there of great value, to wit, of the value of $100,000; and the defendants then and there seized, took, and carried the same away, and converted the same to their own use." The second count charges that on the day, and each of the days, and during all the time and at the place in the last count mentioned, the plaintiffs were the owners, as tenants in common in freehold, of the same land and premises, and that "the said defendants then and there, in and upon said premises, seized, took, and carried away, by the means and in the manner mentioned in the above count, divers other large quantities of sand and gravel, water-washed and of superior quality, to wit, thirty thousand car loads, each

car containing, to wit, twenty cubic yards, then and there of great value, to wit, $100,000, of the property of the plaintiffs, then and there found and being, and then and there took and converted and disposed of the same to their own use. to the damage of the said plaintiffs of $100,000, and therefore they bring suit," etc. A demurrer to the declaration and to the amended declaration having been overruled, the defendants below pleaded—First, not guilty; second, that the premises in the declaration mentioned were the close, soil, and freehold of the defendants, and that they entered thereupon, and did the acts charged in the declaration, peaceably, and without force or violence, and as they lawfully might; third, that the supposed causes of action in said declaration stated did not accrue to the plaintiffs at any time within five years next before suit.

At the trial the following facts appeared: In 1865 the lands in question, except section 26, were sold to one Truesdell for delinquent taxes, and a tax deed thereon issued to him in 1867. In 1868 he conveyed to McCready, who in turn, in 1871, conveyed to Fenner W. Ward. Ward in 1887 conveyed to O'Connell, one of the defendants in error, and Michael C. Hayes. The latter subsequently quitclaimed his interest to O'Connell, and O'Connell, December 20, 1888, conveyed to the defendant in error the C. & N. W. Sand & Gravel Company. Ward in the year 1884 leased the property to Hollister, and the latter soon thereafter assigned the lease to Hayes and O'Connor. A tax deed for section 26, dated July 28, 1880, was issued to A. B. Smith upon a sale for the unpaid taxes of 1879. Smith quitclaimed to O'Connor, one of the defendants in error, September 5, 1888, and the latter on December 20, 1888, conveyed his interest to the defendant in error the C. & N. W. Sand & Gravel Company. All these deeds were introduced by the defendants in error for the purpose solely of showing color of title in the defendants. Ward cut firewood from the land conveyed to him in the years 1872, 1874, and 1882, and had firewood cut thereon by others in the years 1872 and 1873. He took supervision of the property, and drove people away who were taking wood therefrom in the year 1880. He rented the land to Hollister in 1884, who leased it for the purpose of cutting grass upon it. Hayes and O'Connell occupied the land, and took sand and gravel from it; and no one but Ward and his tenants occupied the land, or used it for any purpose, from the date of the deed to Ward until the latter sold it to Hayes and O'Connell. The land was unfenced until the year 1888, when it was inclosed by the C. & N. W. Sand & Gravel Company. When Ward purchased from McCready, the boundaries were pointed out to him, and he obtained his family fuel therefrom, the land being then valueless for any other purpose. Hayes and O'Connell in the spring of 1884, under the lease from Ward to Hollister, entered into the open and notorious possession of all the land, and held and used the land until O'Connell conveyed to the C. & N. W. Sand & Gravel Company, December 20, 1888. It was further shown that all taxes upon the lands from the year 1868 to the commencement of this suit were paid by the different persons claiming under the various tax deeds; that the parties in possession built upon the land various dwellings and other buildings, and constructed a large elevated platform, several hundred feet long, to be used in connection with the unloading of tram cars to and upon the railroad cars, and a tram railway for the purpose of bringing to the loading station sand and gravel, and that since December 20, 1888, the C. & N. W. Sand & Gravel Company had been in the exclusive, open, and notorious possession of all the lands; that the parties who had so severally possessed the land claimed title thereto in good faith, either as tenants of the owners thereof, or by virtue of independent title obtained from such owners, claiming title under such tax deed; and that the sand and gravel removed from the lands were so removed by the C. & N. W. Sand & Gravel Company, the other defendants claiming to act as officers of the company, and this was done while in such open, notorious, and exclusive possession, and claiming the land as owner thereof. At the conclusion of the testimony the court below directed the jury to return a verdict of not guilty, and judgment was thereupon entered in favor of the defendants below.

Geo. A. Dupuy, for plaintiffs in error.

S. M. Meek, for defendants in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, *Circuit Judge* (after stating the facts as above). The plaintiffs in error were not in the actual possession of the premises at the occurring of the alleged trespasses, and they were not entitled to the possession of the premises at the bringing of the suit, having previously conveyed their interest. We do not stop to inquire, concerning the declaration, whether the various counts are in trespass or trespass on the case, or some in one and some in the other; for the main question here is whether, in such an action,—whether it be in trespass or in trespass on the case,—the one having legal title, but being out of possession, may recover for injuries done to the freehold by one in actual and peaceable possession under color of title, and claiming in good faith to be the owner. The actions of trespass and trespass on the case were not designed to be actions for the trial of title to the land. They are transitory, not local actions, like ejectment. It is indeed true that when the owner is out of actual possession, having only that constructive possession which flows from his title, he may maintain an action for trespass against one whose only possession is casual, and in aid of the trespass. In such an action he must prove his title to the land, in order to show himself to be the owner of, and entitled to, that which has been severed from the freehold. We, however, understand the rule to be that the true owner out of possession cannot maintain an action to recover damages for injury to the freehold, or for the severance and conversion of a portion of the freehold, against one in the open, notorious, exclusive, adverse, and hostile possession, claiming under color of title in good faith. Such an action is not the appropriate remedy. Com. Dig. "Trespass"; Rolle, Abr. "Trespass," K, 3, K, 4; Allen v. Thayer, 17 Mass. 299; Bigelow v. Jones, 10 Pick. 161; Wood v. Lafayette, 68 N. Y. 190; Brothers v. Hurdle, 32 N. C. 490; Branch v. Morrison, 50 N. C. 16; Id., 51 N. C. 16; Mather v. Ministers of Trinity Church, 3 Serg. & R. 508; Wright v. Guier, 9 Watts, 172; Brewer v. Fleming, 51 Pa. St. 102; Transit Co. v. Weston, 121 Pa. St. 485, 15 Atl. 569; Lehigh Zinc & Iron Co. v. New Jersey Zinc & Iron Co., 55 N. J. Law, 350, 26 Atl. 920; Rowland v. Rowland, 8 Ohio, 40; White v. Yawkey, 108 Ala. 270, 19 South. 360; Halleck v. Mixer, 16 Cal. 574; Page v. Fowler, 28 Cal. 605; Cook v. Foster, 2 Gilman, 652; Anderson v. Hapler, 34 Ill. 436; Winkler v. Meister, 40 Ill. 349; Smith v. Wunderlich, 70 Ill. 426; Railroad Co. v. Cobb, 82 Ill. 184; Ft. Dearborn Lodge v. Klein, 115 Ill. 177, 3 N. E. 272. The action of ejectment in such cases furnishes ample relief, coupled with the equitable consideration that under statutes in vogue in most of the states the defendant in actual possession under bona fide color of title may have proper allowance for the betterments he has placed in good faith upon the property, and which have increased its value. Having the legal title, Francis Johnson could have had his action for a trespass or entry amounting to an ouster, but the statute of limitation has run against the assertion of that right. To enable the true owner to recover for damages done subsequently to the ouster, there must be a re-entry. The supreme court of Michigan, in Busch v. Nester, 70 Mich. 525, 38 N. W. 458; McKinnon v. Meston,

104 Mich. 642, 62 N. W. 1014; Cook v. Cook, 106 Mich. 164, 64 N. W. 12; Moret v. Mason, 106 Mich. 340, 64 N. W. 193,—have gone as far as any court in opposition to the rule, although it must fairly be said that in each of these cases the decision seems to be rested upon the ground either that the case presented was not within the rule, or that the alleged possession was only a subterfuge, or a fugitive possession merely for the purpose of committing the trespass complained of. In the case before us, however, the possession was undoubtedly long continued, bona fide, exclusive, and hostile, under claim and color of title, accompanied with the payment of taxes for many years. Under such circumstances the rule is too well settled to be disregarded, whatever may be thought of the justice of the rule. If its enforcement will deprive the plaintiffs in error of all remedy, it is only because by their voluntary act they have devested themselves of title.

We are asked to hold that the possession of the defendants in error has ripened into a perfect title under the statute of limitations of the state of Illinois. We cannot do that, because the courts in this class of actions are not at liberty to try the title to land, and also because the evidences of title were introduced merely as a basis for color of title accompanied by possession, and not in support of any claim of absolute title to the land. The judgment is affirmed.