## LLOYD WILKES and Another v. EPHRIAM M. HOLMES.[1]

February 5, 1915.

Nos. 19,033—(212).

**Replevin — absence of signature from agreement.**

1. A written contract, made in duplicate, purporting to transfer an automobile from plaintiffs in consideration of a transfer by defendant to plaintiffs of certain shares of corporate stock, was not signed by one of the plaintiffs, although he was named in the body of the contract; but the other plaintiff and defendant signed the duplicates and retained one each; thereafter the automobile was delivered to defendant by the plaintiff who had not signed. *Held*, in this an action of replevin, that the mere lack of the signature of one of the plaintiffs is not sufficient proof of an understanding or agreement that the contract was not to take effect until signed by both plaintiffs.

**Replevin — action against joint owner.**

2. Replevin does not lie against a joint owner, or tenant in common, of an article of personal property.

**Contract — indefiniteness.**

3. The contract here involved is not void for uncertainty or indefiniteness.

[1] Reported in 150 N. W. 1098.

Action of replevin in the district court for Mille Lacs county to recover possession of an automobile or $500, the value thereof, and $100 damages for its detention. The case was tried before Parsons, J., and a jury which returned a verdict in favor of plaintiffs and fixed the value of the property at $1,500. From an order denying defendant's motion for a new trial, he appealed. Reversed.

*Laybourn & Lucas,* for appellant.

*Charles Keith* and *E. L. McMillan,* for respondents.

HOLT, J.

Plaintiffs brought this action to recover possession of an automobile which they claimed to own. Defendant answered that he was the owner, having obtained it from plaintiffs under a contract by which he traded 60 shares of stock in a creamery corporation for the car. Plaintiffs had a verdict, and defendant appeals from the order denying a new trial.

The record discloses this situation: Plaintiffs, father and son, lived at Milaca, and, at the time of this transaction, were in the automobile business selling and trading cars. A. C. Wilkes, the father, had previously been associated with one Smith. How the son Lloyd came to enter the firm, or have any interest in the car involved, does not appear from plaintiffs' testimony. A. C. Wilkes bought and paid for it in the first instance. In the summer of 1913, A. C. Wilkes met defendant, and, about the time the present trade was made, there was concluded between them a real estate deal in which 90 shares of creamery stock figured. The real estate transaction had no connection with the automobile deal, but some disagreement therein seems to have furnished the occasion for this law suit. On September 17, 1913, A. C. Wilkes and defendant met in Minneapolis to negotiate this trade of the automobile for the 60 shares of stock in the creamery. They came to terms, and repaired to an attorney's office to execute the contract. The contract was prepared consisting of typewritten duplicates, plaintiffs being named therein as parties of the first part, and defendant as party of the second part. The contract reads: "Said party of the first part agrees and does hereby sell, assign, transfer and set over unto said party

of the second part" the automobile, describing it, and "said party of the second part does hereby agree and hereby sells, transfers and set over to party of the first part" the shares of creamery stock, describing them, "subject however to an incumbrance of forty-five hundred dollars." The only other agreement contained in the instrument is this: "Said party of the first part giving their promissory note to the Market State Bank of the city of Minneapolis in the sum of forty-five hundred dollars ($4,500) to which note said party of the second part does hereby agree to sign as indorser and agrees with said parties of the first part to carry said note for one year or longer as said parties of the first part may desire after maturity of said note." At the time A. C. Wilkes was informed that the shares of stock were then held by said bank as collateral security to a note in the amount stated, signed by defendant. That note came due November 5, 1913. Each duplicate was signed, witnessed and acknowledged by plaintiff A. C. Wilkes and the defendant, one being retained by Wilkes and the other by defendant. In the duplicate produced by Wilkes at the trial we find a line drawn with pen and ink below the two signatures and at the end of the line is written the word "seal." The line and word "seal" were never placed on the duplicate exhibited by defendant. After the execution and exchange of the contracts defendant went with A. C. Wilkes to Milaca for the purpose, as defendant claims, of receiving the automobile. A. C. Wilkes contends that defendant went to see whether he would accept it or not. When they arrived at Milaca on Saturday, September 19, Lloyd had the car at Princeton. A. C. Wilkes by telephone requested him to bring it to Milaca. It was done. On Sunday morning defendant started for Minneapolis in the car. The Wilkes claim that defendant was in a hurry to get to Minneapolis and wanted Lloyd to take him there in the car, but Lloyd, having an engagement at Princeton, could go no further, and let defendant drive it from there on. Defendant denied that he asked either of them to drive the car to Minneapolis for his accommodation. Monday or Tuesday following, A. C. Wilkes came down to Minneapolis. He was at the Market Bank, and met defendant. Again the two disagree as to what took place. Wilkes claims

that by previous agreement he was to come down and go with de-
fendant to the bank to close the deal. This is denied by defendant,
insofar as it relates to the automobile trade.

The court instructed the jury, in substance, that plaintiffs were
entitled to a verdict if they proved an understanding or agreement
that the contract was not to take effect until it was signed by Lloyd
Wilkes. At the trial and on the motion for a new trial defendant
raised the objection that the evidence does not show a conditional
delivery of the contract, that under any view of the case the action
does not lie because as a matter of law the title of A. C. Wilkes
passed to defendant, and that there is no evidence to support a ver-
dict under the law as above stated. The assignments of error here
present the same question.

The trial court instructed in harmony with the law of this state.
"And any one who executes a contract may protect himself from
liability thereon by affirmatively showing an express agreement that
there should be no delivery until others executed it." Naylor v.
Stene, 96 Minn. 57, 104 N. W. 685. But in this case there is an
utter absence of any testimony that the contract should take effect
only upon Lloyd signing it. Undoubtedly there was a delivery of
the contract as between defendant and A. C. Wilkes. Not a word
was at that time said about any other signature. Nor do either
A. C. Wilkes or Lloyd claim that the subject was thereafter men-
tioned. The duplicate given to defendant contained no place for
Lloyd's signature. Lloyd knew about the trade, read the contract
Saturday, made no objection thereto, turned over the car to defend-
ant without any expressed condition or reservation, and testified
that he approved what trade his father made. Secret intentions
of the plaintiffs as regards the signatures to the contract, or the
delivery thereof, or of the car cannot now avail them. What is
more, the admitted acts of plaintiffs disprove the claims that the
contract was not to be deemed complete until Lloyd's signature,
and that the deal was to be closed in the bank on Monday, for Lloyd
did not come to Minneapolis either Monday or Tuesday, his name
was never signed to the duplicate A. C. Wilkes had, nor was a $4,500
promissory note bearing Lloyd's signature brought down. Without

Lloyd's presence and without his signature to duplicate contract and a note there was no possible way of closing the deal, on plaintiffs' theory, when A. C. Wilkes came to Minneapolis on Monday. In the face of this evidence, and without considering at all defendant's, we are of opinion that the instrument does not furnish sufficient evidence of incompleteness in itself "to sustain a finding that there was an understanding or agreement that the contract was not to take effect until it was signed by Lloyd Wilkes." The case of Stub v. Grimes, 38 Minn. 317, 37 N. W. 444, is relied on by respondent, but the contract there embodied mutual obligations which were to be performed in the future with reference to the subject matter of the agreement, and hence it was held that, until all signed, the contract was not complete. In the present case nothing was by the contract agreed to be done in the future either to the stock or to the automobile, but by the terms thereof the title passed at once. Rail v. Little Falls Lumber Co. 47 Minn. 422, 50 N. W. 471. A case more in point than Stub v. Grimes is Naylor v. Stene, supra, and the authorities therein cited, particularly Dillon v. Anderson, 43 N. Y. 231, wherein the syllabus reads: "A contract executed between two parties, and in the body of which a third person is also named as a party who does not join in the execution of it, is nevertheless, on its face good, as against the parties executing it, and it rests upon either party denying its validity, to show that he was not to be bound by it, until it was also executed by such third party. It must appear that, at the time the contract was entered into, the party expressly declared his intention not to be bound by it until it was executed by the third person, or he cannot afterward set up the fact that the contract was not executed by such third person as an objection to its validity against himself." To the same effect is Breiling v. Hybl, 167 Ill. App. 165.

Let it be assumed that Lloyd was part owner of the automobile and that his interest did not pass, still, if defendant by the contract acquired the interest of A. C. Wilkes, this action in replevin does not lie. Sheldon v. Brown, 72 Minn. 496, 75 N. W. 709; Busch v. Nester, 70 Mich. 525, 38 N. W. 458. Johnson v. Stone, 111 Minn.

228, 126 N. W. 720, recognizes the rule, but applies an exception, and so does Fines v. Bolin, 36 Neb. 621, 54 N. W. 990.

It is also urged that the contract is void because indefinite and uncertain. It is clear and certain as to the automobile and the creamery stock, the exchange of which was the main object of the parties. The agreement in respect to defendant lending his name to carry the indebtedness to which the 60 shares of creamery stock was subject may be somewhat vague. But even so, its purpose is stated with sufficient clearness to enable the parties to comply with the provisions thereof, especially when considered in connection with surrounding circumstances.

We see no merit in the contention of plaintiffs that defendant has failed to perform. A fair construction of the provision just referred to, and above set out in *haec verba,* indicates that plaintiffs were to take the first step by presenting the note for defendant to indorse. Then it was up to him to see that the bank accepted it and continued the credit.

Since a new trial must result it is not necessary to consider other assigned errors not likely to again arise.

Order reversed.