DAN. H. BALL AND URSULA R. SMITH v. WILLIAM C.
BUSCH.

*Finding of court—Tax sale—Invalidity of deed.*

1. A general finding by the court in an action of ejectment that the
   defendant is guilty of unlawfully withholding the premises
   described in the declaration, as therein alleged, and that plaintiff
   is entitled to hold the same in fee, takes the place of a verdict by
   a jury, and is *conclusive*, so far as questions of fact are concerned,
   if there is *any* evidence *properly* received tending to support it.[2]

---

[2] See How. Stat. § 6487, and notes ; *Parsons v. Clark* 59 Mich. 414
(head-note 4).

2. The sale of lands under the provisions of Act No. 9, Laws of 1882, for the tax of 1881, was *unauthorized* and *void*, and deeds issued on such sale, showing on their face such infirmity, are not *prima facie* evidence of title in the grantee. *Busch v. Nester*, 38 N. W. Rep. 462; *Nitz v. Bolton*, 39 Id. 15.

3. How. Stat. § 1092, does not apply to cases where the invalidity of the tax deed offered in evidence appears upon its face.

So *held*, on facts stated in head-note 2, where the deed was issued for the taxes of 1881 under a sale pursuant to the *general* tax law of 1882.

4. For the remaining points decided, reference is had to the concluding portion of the opinion, and the cases there cited, and to the brief of plaintiffs' counsel; and see note below.

---

NOTE.—Act No. 229, Laws of 1881, amended by Act No. 7, Laws of 1882, provided for the sale of "*State tax lands*" by the Auditor General at a gradually reduced price, measured by fixed dates, and the amended act authorized the sale of all *such* lands remaining unsold at the annual tax sales of 1884, which were to be conducted in the same manner, as near as may be, as sales for delinquent taxes had been by county treasurers, who were required to give to purchasers the like certificates, and with like effect, as those theretofore given to purchasers of State tax lands, and the Auditor General was required, on their presentation, to execute and deliver to the purchaser a deed conveying all the *right, title,* and *interest* of the State in and to said State tax lands, subject to taxes for 1881 and subsequent years. This amended act was approved March 13, 1882, and took immediate effect, and was passed, as was the original act, to enable the State to dispose of the immense quantity of State tax lands which had accumulated on its hands.

March 14, 1882, an act revising the tax laws of the State (Act No. 9, Laws of 1882) was approved, and took immediate effect. This act provided for proceedings in the equity courts, culminating in decrees fixing the amount of the tax lien, and providing for a sale of lands charged therewith by the county treasurers on the first Monday in *May*, instead of *October*, as provided by the old law. The first sale was held May 5, 1884, under the new law, at which time the sales of State tax lands provided for by sections 4 and 5 of Act No. 7, Laws of 1882, were also held.

Act No. 11, Laws of 1882, approved March 14, 1882, and ordered to take immediate effect, repealed the tax law of 1869, and various other acts affecting taxation, with a saving clause, by which the repealed acts remained in force *only* for the completion of all proceedings theretofore begun for the collection of taxes, except as otherwise provided by law, and for the protection of all rights gained thereunder, and the conveyance of all land theretofore sold, or that might thereafter be sold, and all actions commenced and then pending, under the provisions thereof. *Goodman v. Nester, post.*

The constitutionality of the *general* tax law of 1882 was questioned in the Marquette and Wayne circuit courts, and sustained in the one and denied in the other, and the Supreme Court, by an equal division, affirmed both judgments. *State Tax Law Cases*, 54 Mich. 350.

Act 153, Laws of 1885, approved June 9 of that year, and taking immediate effect, repealed the law of 1882, and substantially restored

Error to Baraga. (Williams, J.) Argued November 9 and 10, 1886. Decided January 20, 1887.

Ejectment. Defendant brings error. Affirmed. The facts are sufficiently stated in the opinion, and in the briefs of counsel.

*F. O. Clark,* for appellant:

The rejection of the tax deeds offered in evidence was

---

the 1869 law, so far as the *sale* of lands delinquent for taxes was concerned. Section 68 provided for the sale, under the provisions of the *new* law, of all lands held by the State under bids made at the tax sales of *May 5, 1884,* and of all lands "heretofore assessed or returned as delinquent for non-payment of taxes thereon upon which no sale has been made." Section 118 provided that any tax deed issued pursuant to a decree made under the *general* tax law of 1882 should transfer to the grantee the lien of the State on the land for the consideration expressed in the deed, and converted such deed into a mortgage for such amount, with the right on the part of the grantee to foreclose it at any time within two years from June 9, 1885.

September 29, 1885, in the case of *Thomas v. Collins,* 58 Mich. 64, the Supreme Court held a sale made under the 1882 tax law, for the taxes of 1881, *void,* for the reason that under its title said law was entirely *prospective* in its operation.

February 3, 1887, in the case of *Nester v. Busch, post,* the Court decided that the provisions of section 118 of Act No. 153, Laws of 1885, above cited, were not fairly within the title of the act, which was identical with that of the *general* tax law of 1882.

March 1, 1887, Act No. 17, Laws of 1887, was approved, and provided that all proceedings for the collection of unpaid taxes assessed prior to the passage of Act No. 153, Laws of 1885, and for the sale of property, might be had in accordance with its provisions, and should be as valid as if such taxes had been assessed under the 1885 act, and also *attempted* to *validate* all sales made under said act.

In the case of *Davenport v. Auditor General,* 38 N. W. Rep. 211, the Court held that portion of the *general* tax law of 1882 providing for the *assessment* and *review* of property constitutional, and that an assessment and review in the spring of 1885 for the taxes of that year, made under the 1882 law, was legal, and that the collection of taxes *thereafter* levied by virtue of such assessment, under the 1885 law, could be enforced under the provisions of the *latter* act.

In *Humphrey v. Auditor General,* 38 N. W. Rep. 214, a bill was filed to restrain a *sale* for taxes assessed in 1884 under the 1882 law, based on the provisions of the 1885 act. The case was being argued the day the 1887 act took effect, and the Court dismissed the bill, and held the taxes a lien on the land, but for want of proper legislation their collection could not be enforced until the law of 1887 took effect, and that proceedings to that end must be taken *de novo.*

November 1, 1888, in the case of *Hall v. Perry,* 40 N. W. Rep. 324, the Court held a sale of land made under the *retroactive* provisions of the 1885 law for the taxes of 1882 and 1883, assessed under the 1882 law, *absolutely void,* the 1885 law being *prospective* only in its operation; and that section 2 of Act No. 17, Laws of 1887, which attempts to *validate* such *void* sales, was *unconstitutional.*

error.    Section 1092, How. Stat., makes such deeds *prima facie* evidence of title in the holder, and of their due execution.    Upon their face there was nothing warranting their rejection.

The return of the county treasurer to the Auditor General of lands delinquent for taxes is not the best evidence of the failure of the town treasurer to verify his return to the county treasurer of unpaid taxes, or of the failure of the county treasurer and clerk to certify to said return to the Auditor General; neither is it made evidence by statute. The return of the township treasurer to the county treasurer of lands delinquent for taxes, produced from the county treasurer's office, apparently unmutilated, and not verified by the town treasurer, would not of itself overcome the presumption of regularity raised by the statute, and would not show that such affidavit had not been attached to the original return, or that such return had not been mutilated.    There should be proof to show the genuineness of the paper, and that it has remained unaltered.

Sections 163 and 164, tax law of 1869 (How. Stat. §§ 1165, 1166), were designed—

*a*—To provide that a tax proceeding should not be invalidated by any error or irregularity in mere matter of form.

*b*—To abrogate the rule that a sale of land for several taxes is void by reason of prior payment or illegality of one of them.

*c*—To remove the presumption, arising from the absence of a record or paper from the proper office, that it never existed: *Upton v. Kennedy,* 36 Mich. 215.

Prior to the enactment of these sections, such a presumption obtained:    *Platt v. Stewart,* 10 Mich. 260; *Hall v. Kellogg,* 16 Id. 135; *Hogelskamp v. Weeks,* 37 Id. 422.

Under the statute cited, all papers necessary to exist are presumed to exist in due and regular form; and, this fact conclusively appearing, such statutory presumption cannot be contradicted by the testimony objected to: *Silsbee v. Stockle,* 44 Mich. 564, 565.

Want of a certificate from the clerk of the board of supervisors of amount of taxes to be raised for township purposes will not invalidate taxes lawfully voted for such purposes:[1] *Robbins v. Barron,* 33 Mich. 124.

If the decision in *Case v. Dean,* 16 Mich. 12, sustains the doctrine that an excess of seven cents upon a valuation of $100 invalidates a tax, it will bear review under the statute

---

[1] See *Peninsula Iron Co. v. Crystal Falls,* 60 Mich. 519 (notes).

cited; the trend of decisions now being to protect the public revenue where no substantial wrong has been done to the tax-payer.

*Ball & Hanscom,* for plaintiffs:

Sales of State tax lands under Act 7, Laws 1882, were to be conducted in all respects, as near as may be, as like sales have been heretofore conducted. C. L. 1871, § 1087, makes no provision for a resale of land if purchaser neglects to pay the purchase money, but provides for the cancellation of the bid after 24 hours' default, and a resale of the land at the discretion of the county treasurer. Unsold lands are to be re-offered before close of sale.

Defendant's default in payment worked a cancellation of his purchase, and was so treated by the county treasurer, whose substitution of his wife's name as such purchaser, without public sale to her, she not being present, and having nothing to do with the purchase, amounted to a purchase by the county treasurer as agent for his wife, and was void. [Facts stated appear in record.] Cooley, Tax. (2d ed.) 492, and note; *Clute v. Barron,* 2 Mich. 192.

The deeds for taxes of 1881 show upon their face that they are based upon sales made under Act 9, Laws of 1882. Said act does not apply to taxes of 1881, and said sales are void: *Thomas v. Collins,* 58 Mich. 64.

The deeds for taxes of 1880 and prior years show upon their face that they were issued under Act 229, Laws of 1881, as amended by Act No. 7, Laws of 1882. Section 4 provides for sales of these State tax lands at the time and place appointed for the tax sales of 1884. The provision in the tax law of 1882 for selling lands for taxes of 1881 being void, as held in case of *Thomas v. Collins,* there was no time *appointed for tax sales in the year 1884* except that fixed by the tax law of 1869, on the first Monday of October. The sales under which these deeds were issued were made May 5, 1884, and were therefore void.

But, if they were not void for this reason, they were not *prima facie* evidence of title, because the statute under which they were issued does not make them so. How. Stat. §§ 1092, 1126, only apply to deeds issued under the tax law of 1869. These deeds would not tend to show title in the purchaser at the tax land sale, without further evidence going to show that the proceedings upon which they were based were regular, and they should have been rejected: *Farmers'*

& *Mechanics' Bank v. Bronson,* 14 Mich. 373; Cooley, Tax. (2d ed.) 517.

The sale for taxes of 1869 was void for want of verification by township treasurer of his return made to the county treasurer of lands on which taxes remained unpaid (*Upton v. Kennedy,* 36 Mich. 220); also for failure of the county treasurer to certify the transcript of delinquent returns forwarded by him to the Auditor General, and of the county clerk to certify the transcript (C. L. 1871, §§ 1020, 1033, 1034).

The sales for taxes of 1872, 1873, 1874, and 1875 were void. The certificate of the supervisor to the assessment roll for each year failed to conform to the statute, by omitting to state that his valuation of the property was "not at the price it would sell for at a forced or auction sale:" *Clark v. Crane,* 5 Mich. 154; *Silsbee v. Stockle,* 44 Mich. 565, 566.

The sales for taxes of 1876, 1877, 1878, and 1880 were void, because the township tax assessed for each year included money to pay principal and interest on outstanding bonds issued by the township without authority of law. Section 477, subd. 15, C. L. 1871, empowers the board of supervisors to authorize a township to borrow or raise by tax not exceeding $1,000 in any one year for road and bridge purposes, and to prescribe the time for the payment of such loan. July 7, 1875, the board of supervisors of Baraga county voted to authorize the township of Arvon, in which the lands in suit were situated, to borrow $2,000 "for building and repairing roads in said township, and to issue bonds for the same, payable in one, two, three, four, and five years, with interest at seven per cent. per annum." An election was held, and in November, 1875, bonds for $2,000 were issued, payable in *four* annual installments. The bonds so issued were double the amount allowed by law, and payable in a shorter time than was authorized by the resolution of the board of supervisors.

There was no authority for including in the amount for which these lands were sold at the tax sale in 1877, for taxes of 1876, the back taxes of 1870 and 1871: *Houghton Co. v. Auditor General,* 41 Mich. 28.

The sales for taxes of 1877, 1879, and 1880 were also void, because the sums for which the sales were made included highway taxes placed upon the roll as a money tax, without having been assessed against the land upon any highway roll as a labor tax: C. L. 1871, §§ 1217–1221. The supervisor had no authority to enter the tax upon his roll until it had

been returned to him as delinquent upon the labor. roll:  C. L. 1871, §§ 1240, 1242, 1247.

The sales for taxes of 1878 were also void by reason of excessive apportionment.

The sale for taxes of 1879 was void, because the sums for which the lands were sold for taxes of this year included the taxes of 1870 and 1871, with a large amount of interest, reassessed without authority. These taxes were rejected by the Auditor General when first returned, in 1871 and 1872. The rejections were set aside, and the tax re-instated in 1877. There was no authority for this last act. When the taxes were rejected, the board of supervisors of Houghton county, in which these lands then were, were required to cause them to be "re-assessed on the same lands, and collected with the taxes of the then current year:" C. L. 1871, §§ 1074, 1075, 1076. The time for re-assessing these taxes was in the years 1871 and 1872 respectively. Instead of re-assessing, the board caused a petition to be filed in this Court for a *mandamus* requiring the Auditor General to credit the county with the taxes. The application was heard, and denied April 17, 1877 (*Houghton Co. v. Auditor General*, 36 Mich. 271). There was no authority then to revive the taxes, either for the purpose of sale or re-assessing: *Houghton Co. v. Auditor General*, 41 Mich. 30.

The sale for taxes of 1879 was also void because of excessive school tax.

The sale for tax of 1880 was also void, *first*, because of excessive apportionment of State tax, and, *second*, because of an unlawful bridge tax. The only provision for bridge tax is contained in section 1306, C. L. 1871. The orders contemplated by this section are only authorized when there has been a petition in writing by six freeholders, showing that a bridge has been destroyed and asking for its repair or reconstruction. The highway commissioner must examine, and determine that the public interest requires the expenditure. The proceedings of the highway commissioner must be made a record:  C. L. 1871, § 732. This, being an essential step in the course of a levy of taxes, must appear of record: *Moser v. White*, 29 Mich. 60; *Powers' Appeal*, Id. 504; Cooley, Tax. (2d ed.) 339.

SHERWOOD, J. The plaintiffs bring ejectment against the defendant to recover the west half of section 26, and the south half of the north-west quarter of section 23, in town 52 north, of range 30 west, situate in the county of Baraga.

The title of the plaintiffs, by a chain of conveyances from the United States down to the time of bringing suit, and the ouster of defendant, were established on the trial.

The defendant seeks to defend under tax deeds given by the Auditor General upon sales made of the property for taxes for the years 1869, 1872, 1873, 1874, 1875, 1876, 1877, 1878, 1879, 1880, and 1881.

The cause was tried in the Baraga circuit before Hon. W. D. Williams, circuit judge, without a jury, who made a special finding as follows:

"That the defendant is guilty of unlawfully withholding the premises above mentioned, as alleged by the plaintiffs in their declaration, and that the plaintiffs are entitled to hold the same in fee;"—

And gave judgment accordingly. The defendant brings error.

The record is quite full, and must be regarded as containing all the evidence to be considered on the question raised. All the assignments of error are based upon rulings relating to the validity of the tax titles, and to the admission of evidence relating thereto.

The finding of the court takes the place of a verdict by a jury, and, so far as questions of fact are concerned, is conclusive, if there is any evidence given tending to support it. The general finding in the case must control, unless it is based upon testimony improperly admitted; and this leads directly to the errors alleged relating to the testimony.

Nine errors are assigned involving the rulings of the court in taking testimony. We have carefully examined the record, and the arguments of counsel relating to each of these assignments, and do not find any error committed by the court in any of the rulings.

The other nine assignments of error raise legal questions relating solely to the validity of the tax titles offered in evidence by the defendant. These questions are not new. They

have been before this Court, and nearly all passed upon, and those which have not fall within the principle of the decisions of this Court already made, and a rediscussion of the questions would not be profitable now, and certainly is entirely unnecessary to a proper decision of the case.

That the several tax titles offered in evidence are clearly invalid under our previous decisions is clear, and the circuit judge did right in so holding.   Cooley, Tax. (2d ed.) 339, 429, 430, 492, 517; *Clute v. Barron,* 2 Mich. 192; *Lacey v. Davis,* 4 Id. 140; *Clark v. Crane,* 5 Id. 154; *Crittenden v. Robertson,* 13 Id. 61; *Farmers' & Mechanics' Bank v. Bronson,* 14 Id. 373; *Case v. Dean,* 16 Id. 33; *Moser v. White,* 29 Id. 60; *Powers' Appeal,* Id. 504; *Robbins v. Barron,* 33 Id. 124; *Upton v. Kennedy,* 36 Id. 220; *Houghton Co. v. Auditor General,* Id. 271; S. C. 41 Id. 30; *Silsbee v. Stockle,* 44 Id. 565; *Thomas v. Collins,* 58 Id. 64; *Busch v. Nester,* 62 Id. 381.

We may properly say, in conclusion, the rejection of the deeds complained of, when offered in evidence, was correct. Their invalidity appeared on the face of the instruments. How. Stat. §§ 1092, 1165, do not apply to such a case. The Legislature did not intend to say that a paper shall be held *prima facie* valid, when it carries upon its face the evidence that shows it void.

The record shows no error that we have been able to discover, and the judgment entered upon the finding of the circuit judge must be affirmed.

The other Justices concurred.