LEVI TILLOTSON v. CHAUNCEY H. GAGE, CIRCUIT JUDGE OF SAGINAW COUNTY.

[See 96 Mich. 144.]

*Taxes—Void title—Lien of holder—Enforcement—Jurisdiction— Statute of limitations.*

How. Stat. § 1167, which provides that, if any tax deed made by the Auditor General shall prove to be invalid for any cause not enumerated in the preceding section, the lien of the State for all lawful taxes shall remain in full force, and be transferred to the grantee, his heirs and assigns, who may recover from the owner of the land such taxes, and all subsequent taxes paid by them, with 25 per cent. interest thereon from the dates of payment, and in case judgment is rendered against them for the recovery of the land, in any action of ejectment or other action, either at law or in equity, the court shall ascertain the amount due to the holder of such tax deed, for principal and interest, and for all improvements made on the land, and shall decree the payment thereof, and, in default of such payment, shall decree that the land be sold therefor, is constitutional, and is construed as follows:

a—The language of the section is broad enough to include the holders of tax titles purchased of the State.

b—The proceeding to enforce the lien of the holder of the tax deed is ancillary to the judgment adjudging its invalidity, and must be instituted on the equity side of the court, and the

amount of such lien must be ascertained and determined in such proceeding; citing *Weimer v. Porter*, 42 Mich. 569; *Ellsworth v. Freeman*, 43 Id. 488.

c—The statute of limitations does not apply to actions under this provision, which clearly means that, at any time when a plaintiff has recovered in an action of ejectment, the defendant may still have a lien upon the lands for the legal taxes.

d—The rights acquired under this section were not divested by the tax law of 1882[1] (Act No. 11).

*Mandamus.* Argued November 14, 1893. Granted November 28, 1893.

Relator applied for *mandamus* to compel the respondent to vacate an order fixing a time for hearing a motion to ascertain the amount due a defendant in an action of ejectment for taxes and improvements, the tax deed under which he claimed the land having been adjudged invalid in said action. The facts are stated in the opinion.

*G. W. Davis*, for relator.

*L. T. Durand*, for respondent.

GRANT, J. William L. Webber obtained a tax title from the State of Michigan upon certain lands for taxes levied in 1874, 1876 to 1880, inclusive. Relator, who was the owner of the original title, brought an action of ejectment against Webber, in which, on appeal to this Court, the tax title was held invalid. *Tillotson v. Webber*, 96 Mich. 144. After the determination of that case, Mr. Webber made a special motion in the circuit court to ascertain the amount due him for legal taxes included in his tax deed, and for taxes paid, and for money expended in improvements by him. The court granted the order, fixing a time for the hearing and the production of the

[1] See *Shaw v. Morley*, 89 Mich. 313, holding that section 1167 relates to titles acquired after its passage, and to taxes paid after the acquirement of such titles.

proofs. Relator now seeks the writ of *mandamus* to compel the respondent to vacate such order.

The objections raised by the relator are as follows:

"1. The provisions of said section 1131, Comp. Laws 1871, are not embraced in the title of Act No. 169, Laws of 1869, of which they form a part, and are included in said act in violation of art. 4, § 20, of the Constitution, and are void.

"2. The section of the law does not apply to all deeds executed by the Auditor General for taxes levied under the act, but only to the kind specifically mentioned.

"3. The court designed thereby, in which said proceedings for the ascertainment of the taxes and valuable improvements should be prosecuted, is the court of chancery, and the practice under the rules of that court.

"4. The deed in question did not purport to convey title, but only to assign the State's lien for taxes, and the claim is now barred by the statute of limitations.

"5. The section of the law under which Webber makes his claim was repealed by Act No. 11, Laws of 1882, and the remedy provided by the act was extinguished, as respects all purchases made from the State after such repeal."

1. The provision of law under which this proceeding is taken is section 165, Act No. 169, Laws of 1869. The section will be found in full in the note to *Weimer v. Porter*, 42 Mich. 569. It was a part of the general tax law passed by the Legislature of that year, which is entitled, "An act to provide for the uniform assessment of property, and for the collection and return of taxes thereon." Several cases have arisen under this provision, and, so far as the decisions show, its constitutionality is now for the first time questioned: *Robbins v. Barron*, 34 Mich. 517; *Stockle v. Silsbee*, 41 Id. 615; *Sinclair v. Learned*, 51 Id. 335, 344; *Beard v. Sharrick*, 67 Id. 321; *Weimer v. Porter*, 42 Id. 569; *Ellsworth v. Freeman*, 43 Id. 488. But we do not think there is merit in the technical objection that the provisions of the section are not embraced in the title to the act. Any provision, the object and tendency of which

is to secure the collection of the public revenue, is germane to the general title above given. Persons might purchase tax titles under this provision which otherwise they would not, and thus the collection of the public revenue be effected. It was the evident purpose of the provision to induce such purchases. We think the case within the rule of *Van Husan v. Heames*, 96 Mich. 504, and authorities there cited.

2. We think the terms of this statute applicable to this case, in which the lands were bid in by the State, and the State executed a deed to the purchaser. The language is broad enough to include the holders of the tax titles, whether they were bidders at the annual tax sales, and their bids subsequently ripened into titles, or whether they were purchasers from the State of the titles bid in by it.

3. The proper proceeding in these cases was established in *Weimer v. Porter, supra.* It was there held that in the ejectment suit the tax title must be adjudged against the defendant before he can enforce a lien upon the premises for the taxes paid, and that the right to prosecute or litigate the claim for subsequent taxes is postponed until the rendition of the judgment, and that a supplementary proceeding must be instituted on the equity side of the court. The contention of the respondent is that the amount of the lien should be fixed in this proceeding, and that, after that is fixed in the suit at law, the proceeding in equity must be instituted. We think the entire proceeding must be in chancery, under that decision, which was again approved in *Ellsworth v. Freeman, supra.*

4. The statute of limitations does not apply to actions under this provision. The statute clearly means that, at any time when a plaintiff has recovered in an action of ejectment, the defendant may still have a lien upon the lands for the legal taxes.

5. The repealing clause of the law of 1882 expressly reserved and continued in force all former provisions neces-

sary for the protection of all rights gained thereunder. The language of the repealing clause is as follows:

"—Be and the same all are hereby repealed, so far as relates to the future assessment of taxes, and the steps to collect the same. They remain in force only for the completion of all proceedings heretofore begun for the collection of taxes, except as otherwise provided by law, and for the protection of all rights gained thereunder, and conveyance of land heretofore sold, or that may hereafter be sold, and all actions commenced and now pending, under the provisions thereof."

It is very questionable whether the rights of purchasers under former laws are not so vested that they could not be divested by subsequent legislation, but it is unnecessary to determine this question. It was the clear intention of the Legislature, in the clause above quoted, to preserve all such rights.

The writ must issue as prayed, for the reason above given,—that the proceeding must be on the equity side of the court.

The other Justices concurred.