138    5
s138   10
138    24

138    5
144    56

138    5
157   4334

## HOFFMAN v. H. M. LOUD & SONS LUMBER CO.

1. SAVING QUESTION FOR REVIEW—UNRESPONSIVE ANSWER—WITNESSES.

   Reversal will not be granted because an unresponsive answer to a proper question was objectionable as hearsay, no motion having been made to strike it out.

2. SAME—RULING.

   Error assigned to the examination of a witness is unavailing where the record does not disclose that any objection was made to questions asked, or that any rulings were made with reference to which exceptions were taken.

3. TAXATION—SALES—DEEDS—PRIMA FACIE EFFECT—GRADUATION ACT.

   The graduation act of 1881 (Pub. Acts 1881, No. 229), as amended in 1882 (Act No. 7), did not destroy the prima facie effect of tax deeds issued thereafter pursuant to sales made before the passage of such acts.

4. SAME—DEEDS—RIGHT TO ASSAIL TITLE—STATUTES.

   Act No. 11, Pub. Acts 1882, did not have effect to repeal, as to titles theretofore obtained, the provision of the general tax law of 1869 (No. 169, § 164) relating to who might attack the validity of tax titles.

5. SAME—TIMBER—TROVER FOR CONVERSION.

   In trover for the conversion of timber taken from land which the plaintiff claims through tax titles, a contention by defendant, that though under the statute he cannot attack the validity of plaintiff's title as to the land, he can as to the timber, is untenable.

6. INTEREST—RATE—CHANGE OF STATUTE—HARMLESS ERROR.

   Where there have been two changes in the statutory rate of interest during the time for which interest is to be calculated, an instruction to use the middle rate is harmless to defendant where the amount so found is less than it would be under a proper computation.

### ON REHEARING.

1. STATUTES—CONSTRUCTION—IMPLIED REPEALS.

   Repeals by implication are not favored, and, before it can be

said that the legislature intended to make a radical depart-
ure from the settled policy of the State, such intention must
be made to appear by language that is unambiguous, and not
susceptible of two constructions.

2. TAXATION—SALES—DEEDS—EFFECT—REGULARITY OF PROCEED-
INGS.
    The tax legislation of 1881 and 1882 did not repeal the provis-
    ions of the previous tax laws making the auditor general's
    deeds to unredeemed tax lands prima facie proof of the regu-
    larity of the tax proceedings.

Error to St. Clair; Tappan, J. Submitted April 12,
1904. (Docket No. 30.) Decided October 18, 1904. Mo-
tion for rehearing granted March 28, 1905. Reargued June
27, 1905. (Docket No. 2.) Former opinion affirmed July
24, 1905.

Trover by John M. Hoffman against the H. M. Loud
& Sons Lumber Company and others. There was judg-
ment for plaintiff, and defendants bring error. Affirmed.

*Main J. Connine,* for appellants.

*Avery Bros. & Walsh* and *Phillips & Jenks,* for ap-
pellee.

MOORE, C. J. This case has been here before. It is
reported in 111 Mich. 156. Upon the last trial the plain-
tiff recovered a judgment for $2,222. The defendants
have brought the case here by writ of error. The suit
was commenced February 8, 1892. It is trover brought
for the conversion of logs which defendants bought
from one Monroe, who, plaintiff claims, cut the logs from
timber on land belonging to him. It is plaintiff's claim
that William H. Rix and Coolidge M. Comins obtained
from the United States a patent of the land in July, 1872;
that those men were partners engaged in lumbering;
that their partnership ended in the spring of 1872; that
it was then agreed verbally that Comins should have the
timber; that he cut and removed all that was valuable dur-

ing the fall and winter of 1872 and 1873, when Rix and
Comins abandoned the land, not even paying the taxes on
it.   The taxes were not paid for the years 1872 to 1881,
inclusive, but for the taxes of each of these years the land
was sold to the State.   In 1882 the plaintiff bought the
title of the State, obtaining a tax deed from the auditor
general for the taxes of those years.   In 1884 the plaintiff
obtained another tax deed from the auditor general.   Jan-
uary 20, 1886, William H. Rix deeded by quitclaim deed
his interest in the land to Frank Hoffman, who conveyed
the interest to the plaintiff.   It is the claim of the plaintiff
that in the winter of 1885 and 1886 John Monroe cut the
timber into logs, and sold them to defendants, delivering
them at the Au Sable river.

The defense, as stated by counsel, is:

1.   That plaintiff's tax titles were void.

2.   That Monroe cut the timber and sold it to the said
trustees under a license from the original owners, Rix and
Comins, which license inured to the benefit of defendants.

3.   The statute of limitations.

The first assignment of error argued in the brief relates
to the testimony of Weaver in relation to what he under-
stood about a controversy between Monroe and Hoffman,
it being the claim that this testimony was hearsay.   The
question put to the witness did not call for hearsay testi-
mony, but was a proper question.   His answer was not re-
sponsive.   No motion was made to strike it out because not
responsive, or because it was hearsay.   This being the sit-
uation, we cannot reverse the cause because of the answer.
See *People* v. *Howard,* 73 Mich. 12; *Baumier* v. *An-
tiau,* 79 Mich. 516; *Mulliken* v. *City of Corunna,* 110
Mich. 212; *Weiser* v. *Welch,* 112 Mich. 134.

Error is assigned upon the examination of the witness
Annis.   The record does not disclose that objection was
made to the questions that the court ruled upon, or that
exceptions were taken.

Error is assigned to the reading in evidence of the cross-
examination of James Burton and the testimony of George

A. Loud.    Previous to the trial in St. Clair county a stipulation had been made "that any testimony heretofore taken upon the trials in Iosco county, and reduced to writing by the official stenographer" might be read in evidence.    We think the stipulation broad enough to cover what was done.

There are other assignments of error which relate to the admission of oral testimony.    We have examined them, but do not deem it necessary to discuss them.    One of the most important questions in the case is, Did the judge err in holding that the tax deeds held by plaintiff were prima facie evidence of title?    The deeds are dated October 19, 1882.    It is claimed that because of the amendment made to the tax law by Act No. 7, Pub. Acts 1882, the deeds were not prima facie evidence of title.    It should not be forgotten that the land was sold to the State at least four times before the passage of Act No. 7.    Its title under each of its sales when it was obtained was prima facie valid.    We do not think the effect of the "graduation act" of 1881 (Pub. Acts 1881, Act No. 229), as amended by Act No. 7, Pub. Acts 1882, resulted in doing away with the prima facie effect of these deeds.    See *Tillotson* v. *Saginaw Circuit Judge*, 97 Mich. 585; *Harding* v. *Auditor General*, 136 Mich. 358.

The next important question is, Did the court err in holding that defendant could not attack the tax title of plaintiff?

Section 1166, 1 How. Stat. (Laws 1869, Act No. 169, § 164), provides:

"No person shall be permitted to question the title acquired by such auditor general's deed, without proving that he, or the person through whom he claims title, had title to the land at the time of the sale thereof for nonpayment of taxes, or subsequently, which title was acquired from the United States or from this State."

It is said plaintiff cannot invoke this provision of law because he did not purchase until seven months after it had been repealed by Act No. 11, Pub. Acts 1882.    We have

already said the State got a title long before Act No. 11, Pub. Acts 1882, was passed. If this was not a protection to the plaintiff, does the repealing clause have the effect for which defendant contends ? It reads:

" The same is hereby repealed so far as relates to future assessment of taxes and the steps to collect the same. They remain in force only for the completion of all proceedings heretofore begun for the collection of taxes, except as otherwise provided by law, and for the protection of all rights gained thereunder and conveyance of land heretofore sold, or that may hereafter be sold, and all actions commenced and now pending under the provisions thereof."

We do not think this had the effect to do away with the provision relating to who might attack the validity of the tax title. See *Tillotson* v. *Saginaw Circuit Judge*, 97 Mich. 585.

Counsel says, even though the section is in full force when the title to the land is in issue, it does not apply where the title to the timber taken from the land is in issue, and therefore defendant should have been permitted to attack these titles. If counsel is right in this contention, a person owning land chiefly valuable for timber would have a title unassailable by one claiming title, but, if the same person became a trespasser and remover of the timber, he could attack the title. A statement of the proposition is its own answer.

There are other assignments of error, which we have examined, but the only further question calling for discussion relates to the rate of interest. The jury computed it at 6 per cent. Counsel says that because of the provisions found in Act No. 207, Pub. Acts 1899, which reduces the legal rate of interest to 5 per cent., it should have been figured at that rate. The logs were converted in the winter of 1885 and 1886. The verdict was rendered in April, 1903. The legal rate was 7 per cent. until October, 1891, when it became 6 per cent., and so remained until September, 1899, when it became 5 per cent. If the computation

had been made at these rates during these several periods of time, the amount would have been larger than the verdict which was rendered, so that defendant was not harmed. See 16 Am. & Eng. Enc. Law (2d Ed.), p. 1060.

Judgment is affirmed.

Carpenter, Montgomery, and Hooker, JJ., concurred. Grant, J., did not sit.

## ON REHEARING.

Moore, C. J. This case was here and is reported in 111 Mich. 156. It was here again and is reported ante, 5. Upon the application of the defendants, a rehearing was ordered. A reference to the two opinions which have been filed in the case will make a detailed statement here unnecessary.

The question about which this court was in doubt when it ordered the rehearing, and to which the arguments have been principally directed is, Was this court in error in sustaining the ruling of the trial court that the tax deeds offered by plaintiff were prima facie evidence of title? The deeds were in form as follows:

"This indenture made the 19th day of October in the year of our Lord one thousand eight hundred and eighty two, between Hubert R. Pratt, deputy auditor general of the State of Michigan, of the first part, and John M. Hoffman, of Port Huron, Michigan, of the second part, *Witnesseth:*

"That, whereas in pursuance of the provisions of law, the said party of the second part did on the 19th day of October, A. D. 1882, become the purchaser of the rights of the State in and to the following described lands situate in the county of Alcona and State of Michigan in said State which were bid off to the State for the taxes assessed thereon for the year 1872-3-4-5-6-7-8 and 1879, to wit: south half of the southwest quarter of section 36, in town 27 north of range 3 east, containing 80 acres more or less.

"And whereas the said party of the second part obtained a certificate from the auditor general for the purchase of the above described lands according to law, and paid to the State treasurer upon such certificate the sum of $43.92,

being the amount of purchase money thereof as provided by law, which certificate has been presented and surrendered to the said auditor general.

"Now therefore this indenture witnesseth that the said Hubert R. Pratt, deputy auditor general of the State of Michigan, in the name of the people of the State, and by virtue of the authority in him vested by the laws thereof, in consideration of the premises and the payment of the purchase money above mentioned, the receipt whereof is hereby confessed and acknowledged, does by these presents remise, release, and quitclaim unto the said John M. Hoffman, party of the second part, and to his heirs and assigns forever all the rights acquired by the State in virtue of the original sale or sales, to the State in the premises above described, subject to all taxes duly assessed thereon.

"In testimony whereof the said Hubert R. Pratt, deputy auditor general as aforesaid, has hereunto set his hand and seal the day and year first above written.

　　　　　　"HUBERT R. PRATT,　[L. S.]
　　　　　　　" Deputy Auditor General
　　　　　　　　　" of the State of Michigan."

"Signed, sealed, and delivered in presence of
　　" ABRAM HARNLEY,
　　" EDITH A. DEGUE."

The deed was duly acknowledged, and on its margin was printed the following: "No. 139, one certificate, Act 229, Laws of 1881, 20869, State tax land deed."

It is conceded that had the purchaser at the tax sale been an individual, instead of the State, his deed would have been prima facie evidence of title. It is insisted, however, on the part of defendants, that plaintiff obtained his deeds under the provisions of Act No. 229, Pub. Acts 1881, as amended by Act No. 7, Pub. Acts 1882, and that, as the deed provided for in the last-named act is not by its terms made prima facie evidence of title, it cannot be so regarded. It is also claimed that even though plaintiff's tax deeds were not obtained under the law of 1881, as amended by Act No. 7 of 1882, as it was dated October 19, 1882, and as the general tax law of 1869 was repealed by Act No. 11 of the Public Acts of 1882, the deeds are not prima facie evidence of title.

In support of these contentions, counsel for defendants cite *Ball* v. *Busch*, 64 Mich. 336; *Busch* v. *Nester*, 70 Mich. 532; and *Norris* v. *Hall*, 124 Mich. 170. On the part of the plaintiff it is claimed that Act No. 229, Pub. Acts 1881, as amended by Act No. 7, Pub. Acts 1882, was supplemental to the existing provisions of law, and was passed to enable the State to sell its large holdings of State tax lands, and that it did not repeal the provisions of the general tax law of 1869 as to the prima facie character of the deeds. The plaintiff further claims that he obtained his tax deeds under the general tax law of 1869, and, though it was not obtained until that law was repealed by Act No. 11 of the Public Acts of 1882, the benefit of the prima facie character of the deeds was saved by the proviso in the repealing clause; citing *Tillotson* v. *Saginaw Circuit Judge*, 97 Mich. 585, and *Harding* v. *Auditor General*, 136 Mich. 358.

There were three acts passed in 1882 relating to the question of taxes: Act No. 7, which amended Act No. 229 of the Public Acts of 1881; Act No. 9, which was a general tax law, intended to take the place of the general tax law; and Act No. 11, which repealed previous tax laws, except as they were saved by its proviso. It must be confessed that, in deciding cases as to the legal effect of tax deeds issued for the taxes of a series of years preceding and following the enactment of the three acts of 1882, language has been used which it is difficult to harmonize. As early as in 1843 it was provided that the deed given to purchasers at tax sales "should be prima facie evidence of the regularity of all the proceedings to the date of the sale." In a well-considered opinion written by Justice WING in *Sibley* v. *Smith*, 2 Mich. 486, the reasons are given for this provision of the law. He said:

" Where it is doubtful what construction should be placed upon a statute [the same as this one] the court is authorized to collect the intention of the legislature from the occasion and necessity of the law, from the mischief felt, and the object and the remedy in view, and the intention is to

be taken or presumed according to what is consonant to reason and good discretion.  \*  \*  \*  An examination of the legislation of this State will throw light upon the intention of the legislature as manifested by the clause in question.  The legislature for many years was changing statutes concerning tax deeds in an effort to make deeds more effective.  This was a period of great depression in the money market.  The treasury of the State was empty, and the state owed a very large debt.  Eastern men were unwilling to hazard their money in the purchase of tax titles where the resident had so little interest in aiding them to perpetuate the evidence of their titles.  The courts of this State as well as of other States had been exceedingly astute in searching out errors in tax sales, and this course of proceeding had prevailed to such an extent that at length it was generally believed that no valid title could be acquired under a tax sale.  To obviate these difficulties a new system was devised in 1842, and another one in 1843, which was much better calculated to insure a sale of delinquent tax lands, as it provided that the deed to be given to purchasers at tax sales should be prima facie evidence of the regularity of all the proceedings to the date of the sale.  \*  \*  \*  We prefer to act upon the rule that it is the duty of a judge to make such a construction as shall repress the mischief and advance the remedy, and this is held to be the case in an especial manner in respect to statutes of public utility."

In all the subsequent amendments made to the tax law prior to the passage of Act No. 7 of the Public Acts of 1882, this provision of the law was not changed, except to make it stronger.  Section 1092, 1 How. Stat. (section 91, general tax law), provided that the tax deed "shall be prima facie evidence of the regularity of all the proceedings from the valuation of the lands by the assessors to the date of the deed inclusive and of title in fee in the purchaser."  Did the amendment of Act No. 229 of the Public Acts of 1881, by the passage of Act No. 7 of the Public Acts of 1882, change the policy of the State in relation to the evidentiary quality of these deeds, and re-establish in relation to them the rule of strict construction of the common law, which requires that a party claiming title under special proceedings authorized by statute shall prove

that all the material requirements of the statute have been complied with, before the deed can be received in evidence? Before answering this question, it will be well to consider the existing provisions of the law, and the situation of the State in relation to its ownership of tax lands when Act No. 7 of the Public Acts of 1882 was passed. Section 1118, 1 How. Stat., provided that the State tax lands not redeemed or otherwise discharged should be offered for sale at the annual tax sales in each year. The subsequent sections provided for the preliminaries to the making of the sale, for the sale itself, and for the issuing of certificates of sale by the county treasurer. Section 1126 provided for the execution, upon the surrender of the certificate of sale, of a deed to the purchaser by the auditor general,—

"Which shall convey all the right acquired by the State under the original sale or sales: *Provided*, that such deed shall be subject to all the conditions, and have the same force and effect as is given by section 91 of this act [section 1092, 1 How. Stat.] to deeds executed in accordance with the provisions thereof."

Section 1129 provides for the sale of State tax lands at private sale by paying the amount for which the same was first offered in the county, as State tax land, with interest at 10 per cent. per annum. The next section (1130) provides for the execution of deeds to the purchaser by the auditor general. Section 1131 provides:

"All the provisions of law relative to deeds executed by the auditor general, on the surrender of certificates of sale of State tax lands, issued by the several county treasurers, shall be applicable to deeds executed by him for lands purchased at his office, pursuant to the provisions of this act."

It will be seen that the effect of these various provisions was to make all deeds executed by the auditor general of State tax lands prima facie evidence of the regularity of the proceedings, and of the title in fee of the purchaser. This, then, was the situation of the law when Act No. 229 of the Public Acts of 1881 was passed. It is a matter of

common knowledge with those at all familiar with the relation of the State to its tax lands that it was loaded up with them.  The provisions of law in relation to their public and private sale to which we have called attention did not have the effect of securing purchasers.  This being the situation, the legislature undertook to remedy it by the passage of Act No. 229 of the Public Acts of 1881.  This act contained but three sections.  The first section provided for the purchase by the original owner of the title within six months after the act took effect, at private sale, upon application to the auditor general.  The second section provided for the purchase by any person after the act had been in effect six months, upon application to the auditor general.  The purchase under both sections could be made upon more favorable terms than was provided by sections 1127, 1129, 1 How Stat.  Section 3 provided for the execution of deeds by the auditor general, and it further—

"*Provided*, Nothing herein contained shall be construed to prevent any person from purchasing any of said lands under existing laws at any time."

No reference was made to the provisions of sections 1118–1125, 1 How. Stat., in relation to the public sale of State tax lands, nor was there any legislation in the act upon that subject, nor is there any suggestion therein as to what effect should be given to the deeds thereunder.  The more favorable provisions of this act did not afford the relief it was hoped it would bring, and the legislature met in extra session in 1882, and Acts Nos. 7, 9, and 11, Pub. Acts 1882, were passed.  As before stated, Act No. 7 amended Act No. 229, Pub. Acts 1881.  The amendment to section 2 is not material to this controversy.  The amendment to section 3 enabled one to purchase the lands for a period of four months after October 1, 1882, by paying the amount of the original taxes, then for four months by paying three-fourths of the amount of the taxes, then for a like period by paying one-half the amount of the taxes, and

then for a period of time by paying one-fourth of the amount of the taxes. There were other provisions in this section, which it is not necessary to recite. There were four new sections added to the act. Section 4 provided for the public sale of the lands. Sections 5 and 6 read:

"SEC. 5. Such auction sales by county treasurers shall be conducted in all respects as near as may be as sales of State tax lands have been heretofore conducted by such treasurers, and shall be continued from day to day in like manner, until all such lands are disposed of; and certificates shall be given to purchasers on such sales in substantially the same manner and with like effect as such certificates have been heretofore given by county treasurers to purchasers of State tax lands.

"SEC. 6. On presentation of such certificates to the auditor general and on all sales made by the auditor general he shall execute to the purchaser a deed conveying all the right, title, and interest of State in and to said State tax lands, but subject to all taxes assessed subsequent to the year eighteen hundred and eighty, and the deed shall so state."

It is not necessary to refer to section 7. There was no repealing clause to the act, and no statement made as to what the effect of the deed should be. No reference whatever was made to section 1131, 1 How. Stat., which we have heretofore quoted in full, nor to section 1092, 1 How. Stat. This act was approved March 13, 1882, and given immediate effect. On the following day Act No. 9 was approved and given immediate effect. This act was entitled "An act to provide for the assessment of property and the levy and collections of taxes thereon." It was a general scheme, and was intended from then on to cover the entire field embraced in its title. It provided for a hearing and a decree in the circuit court before the land should be sold for taxes. Section 84 reads:

"No tax assessed upon any property, or sale therefor, shall be held invalid on account of any irregularity in any assessment, or on account of any assessment or tax roll not having been made or proceeding had within the time required by law, or on account of the property having

been assessed without the name of the owner, or in the name of any person other than the owner, or on account of any other irregularity, informality, or omission, or want of any matter of form or substance in any proceeding that does not prejudice the rights of the person whose property is taxed; and all proceedings in assessing and levying taxes, and in the sale and conveyance therefor, shall be presumed to be legal until the contrary is affirmatively shown. All records, statements, and certificates herein provided for shall be prima facie evidence of the facts therein set forth. The absence of any record of any proceeding, or the omission of any mention in any record of any vote or proceeding, or of mention of any matter in any statement or certificate that should appear therein under the provisions of any law of this State, shall not affect the validity of any proceeding, tax, or title depending thereon, provided the fact that such vote or proceeding was had or tax authorized is shown by any other record, statement, or certificate made evidence by the terms of this act or any other law of this State. No tax, or sale of property for any tax, shall be rendered or held invalid by showing that any record, statement, certificate, affidavit, paper, or return cannot be found in the proper office; and unless the contrary is affirmatively shown, the presumption shall be that such record was made and such certificate, statement, affidavit, paper, or return was duly made and filed. Where any statement, certificate, or record is required to be made or signed by a school district board or a township board, such statement, certificate, or record may be made and signed by the members of such boards, or a majority thereof, and it shall not be necessary that other members be present when each signs the same. The provisions of this section shall not be construed to authorize any showing impeaching the validity of any deed executed by the auditor general under the provisions of this act, but such deeds shall be held absolute and conclusive as herein provided."

Section 85 reads:

" In any suit or proceeding to enforce or set aside any tax, such tax shall be held illegal only for one of the following reasons:

" *First,* That no law authorizes such tax.

" *Second,* That the person or persons appointed to decide whether a tax shall be raised under a given law have

acted without jurisdiction, or have not imposed the tax in question.

" *Third*, That the person or property assessed was exempt from the taxation in question, or was not assessed.

" *Fourth*, That the tax has been paid.

" *Fifth*, That the supervisor or board of review, in assessing a person or property for taxation, or in the apportionment of the tax to the person or property in question, acted fraudulently.

" If any such illegality, omission, or fraud affects the amount of the tax only, the tax shall be sustained so far . as the same is just and legal."

On the same day that Act No. 9 was approved, Act No. 11 was approved, and was given immediate effect. This was a repealing act of many laws relating to the assessment and levy of taxes. It concluded with these words :

" 'An act to provide for a uniform assessment of property, and for the collection and return of taxes thereon;' and all acts amendatory thereof, be and the same all are hereby repealed, so far as relates to the future assessment of taxes and the steps to collect the same. They remain in force only for the completion of all proceedings heretofore begun for the collection of taxes, except as otherwise provided by law, and for the protection of all rights gained thereunder, and conveyance of land heretofore sold or that may hereafter be sold and all actions commenced and now pending under the provisions thereof."

It is apparent from this statement of the situation that the legislature supposed that by the passage of these three acts it had covered all the essentials of a complete system of taxation. Is there anything in this legislation to indicate that deeds issued by the auditor general either at public or private sale shall lose the prima facie quality which attached to them before this legislation was enacted? We have already stated the substance of all that was contained in Act No. 7, and that there was no repealing clause in it. It is a well-settled principle of law that repeals by implication are not favored. *Connors* v. *Iron Co.*, 54 Mich. 168; *Tillotson* v. *City of Saginaw*, 94 Mich. 244; *Lake Superior, etc., Iron Co.* v. *Auditor General*, 79

Mich. 351; *Merriman* v. *Jackson Circuit Judge*, 96 Mich. 603.

Before it can be said the legislature intended to make so radical a departure from the settled policy of the State as is contended for by counsel for defendant, we think it ought to be made to appear by some language not ambiguous and susceptible to two constructions. This is not done by the language used in Act No. 7. Is it done by the repealing clause in Act No. 11? It provides for the repeal of former acts, to use its exact language, "so far as relates to the future assessment of taxes and the steps to collect the same." It provides the prior laws remain in force "for the completion of all proceedings heretofore begun for the collection of taxes except as otherwise provided by law, and for the protection of all rights gained thereunder and conveyance of land heretofore sold or that may hereafter be sold." We do not think this had the effect of repealing the various provisions of the law in relation to the prima facie character of the deeds issued for the State tax lands. The language used in *Blackwood* v. *Van Vleit*, 30 Mich. 118, seems apropos here. In that case a tax deed given in 1856 for the taxes of 1854 was relied upon by the defendant. The statute in force when this deed was given made the deed prima facie evidence of regularity. The tax law of 1869 had a like provision. It contained a repealing clause similar to the one contained in Act No. 11, Pub. Acts 1882. Justice COOLEY, in speaking for the court, said:

" The plaintiff claimed in the court below that by the repeal of all previous acts the rule of evidence that made the deed prima facie evidence of title was annulled, and, as the act of 1869 only applied to proceedings had under it, the defendant was not aided by it, but was remitted to the rule that would prevail in the absence of any such statute, and must support his deed by proof of the regularity of the proceedings which culminated in it. The circuit court ruled otherwise.

" An examination of the statutes will show very clearly that the legislature has never designed to do away with

the provisions which render these deeds prima facie evidence of title. In every instance where an amendment has been made, this feature has been retained. If the rule of evidence has been abolished as to any of these deeds, it must be conceded that it has been done by inadvertence, as the rule itself has been a part of our State policy for a quarter of a century. This fact will not save the rule if an unquestionable repeal appears, but it may go far to explain any ambiguous or doubtful language. And we think the language of the saving clause in the act of 1869 is to be construed in the light of this State policy. The repeal was not to affect sales previously made. Now it may well be said that the repeal of a rule of evidence applicable to such sales would not affect the sales themselves; but the statute evidently meant not the sales as such, which, indeed, could not be affected by subsequent legislation, but the rights derived from such sales; and these would be very materially affected if the deeds were to be deprived of their quality as evidence of title. And when we find this quality preserved up to the time the act of 1869 took effect, and that that act gave it to all subsequent tax conveyances, the conclusion is irresistible that it was the intention of the legislature by the proviso to the repealing clause to preserve to the holders of previous conveyances the benefit of this rule of evidence."

See, also, *Tillotson* v. *Saginaw Circuit Judge,* 97 Mich. 585, and *Harding* v. *Auditor General,* 136 Mich. 358.

The purpose of the legislature in passing Act No. 229, Public Acts 1881, and Act No. 7, Pub. Acts 1882, was to so legislate as to secure sales of the large amount of land held as State tax lands. To acomplish this result, the price had been greatly reduced; in some contingencies the reduction amounting to more than 75 per cent. of what it had been. A deed of these lands which was prima facie evidence of title in fee would be much more valuable to a purchaser than one which did not possess that quality. It is inconceivable that, in attempting to legislate so as to secure customers for its lands, the State would deliberately take from the deeds which it gave to its customers the quality which made them valuable, and would say to the

purchasers that, before they could establish a title through the deed which the State proposed to give, the customer must show affirmatively the regularity of all the proceedings which led up to the deed. If the legislature had intended to so legislate as to make it impossible for the State to sell its lands, it could not do so more effectively than by taking away from its deeds the prima facie quality they had theretofore possessed. We do not think the legislature so intended, or that by the legislation enacted it accomplished any such anomalous result.

It becomes necessary now to give some attention to the cases cited by counsel for defendant in support of their contention. It will be remembered that in the case at bar the purchase was made at private sale at the office of the auditor general. In the case of *Norris* v. *Hall*, 124 Mich. 170, the purchase was made of the county treasurer at a public sale. It will be observed in the statement of facts that the trial court found as follows:

"I find that for the delinquent taxes of the years 1869 to 1880, inclusive, public sale was made May 4, 1884, under the law of 1882. The deeds executed by the auditor general upon the sale made May 4, 1884, are introduced in evidence by defendants. I find, as a matter of law, that all sales made on May 4, 1884, under the law of 1882, are invalid; that the tax deeds for the years extending from 1869 to 1880, inclusive, were made pursuant to a sale on May 4, 1884, under the law of 1882; and consequently that they are invalid."

An examination of the original record shows that this was the only finding either of fact or law made by Judge Coolidge in relation to the deed based upon the taxes of 1869 to 1880, inclusive. It is apparent the law of 1882 which Judge Coolidge had in mind was Act No. 9, and not Act No. 7, and that his conclusion was based upon the opinions in *Thomas* v. *Collins*, 58 Mich. 64; *Ball* v. *Busch*, 64 Mich. 336. These opinions held that Act No. 9, which provided for the public sale of the State tax lands, was prospective, and did not apply to sales for taxes levied before its enactment. Section 4, Act

No. 7, provides for the public sale of the lands at the tax sale of 1884. At this time these sales were made in October. It is apparent that if the provisions of Act No. 9 as to the time of sale did not apply, as was held in *Thomas* v. *Collins,* supra, and *Ball* v. *Busch,* supra, that the sale should have been held in October, and not in May. It is equally apparent that a deed based upon a sale made in May, and not in October, would be, as found by Judge Coolidge, invalid. It is apparent that a void deed would not possess any evidentiary value, and that, in affirming the action of Judge Coolidge in so holding, it was not necessary to say, as was said in the opinion, that the deed was "inadmissible in evidence, and is ineffectual, for the reason that there was no proof of the regularity of the tax proceedings. The law under which the sale took place did not provide that deeds issued thereunder should be prima facie evidence of title." Such a provision of law would not have helped the matter, for the deed showed upon its face that it was based upon a sale made in May, when the law required it to be made in October. A right result was undoubtedly reached in the case, but we think a wrong reason was given for it. In *Ball* v. *Busch,* 64 Mich. 336, the opinion is a short one, prepared by Justice Sherwood, who gave no reason why the deeds were invalid, but contented himself with saying: "That the several tax titles offered in evidence are clearly invalid, under our previous decisions, is clear, and the circuit judge did right in so holding;" citing a number of authorities, the last two of which are *Thomas* v. *Collins,* 58 Mich. 64, and *Busch* v. *Nester,* 62 Mich. 381. We have already referred to *Thomas* v. *Collins.* In *Busch* v. *Nester,* Justice Campbell said, "We think the State deeds are prima facie evidence of title," but held that a purchaser did not have a right of entry on land on a mere tax certificate before deed. In *Busch* v. *Nester,* 70 Mich. 525, the discussion in the opinion written by Justice Champlin related largely to other questions than the effect of the tax

deeds.   In relation to those the discussion is very brief.
In it this language is used :

"Mr. Busch testified that he submitted his tax deeds to
two attorneys, and they advised him that they were valid,
and, believing the advice to be correct, he took possession.
He further testified as follows : 'I don't think I ever claim-
ed to be in possession of any other parcel of land there, ex-
cept the W. ½ of section 26.   I just had the timber cut off
from them, and that was all.'   The tax title under which
he claimed the west half of section 26 was declared void
in *Ball* v. *Busch*, 64 Mich. 336, which has been decided
since this case was before us on the former occasion.
This court said that the invalidity of the deeds appeared
upon their face, and were properly rejected when offered
in evidence at the trial as not being prima facie evi-
dence of title.   It is only fair to Mr. Busch, and to the
attorneys with whom he advised, to say that the deeds
were issued under the law of 1882, and which had been
held constitutional and valid by a divided court in a case
arising in Marquette county, and that the advice appears
to have been based upon that decision."

It is apparent the law of 1882 which Justice CHAMPLIN
had in mind was Act No. 9, and not Act No. 7, for it was
the former which was construed in the case arising in
Marquette county.   A reference to the case cited by him
will also show he was not quite accurate in stating what
was decided.   We quote from the opinion cited :

"We may properly say, in conclusion, the rejection of
the deeds complained of, when offered in evidence, was
correct.   Their invalidity appeared on the face of the in-
struments.   1 How. Stat. §§ 1092, 1165, do not apply to
such a case.   The legislature did not intend to say that a
paper shall be held prima facie valid when it carries upon
its face the evidence that shows it void."

We have already shown that this court had held that
the provision of Act No. 9 for the public sale of State tax
lands was prospective, and that sales made in May for
taxes levied before the act took effect were void.   It is ap-
parent the question involved in the last two cases referred
to was not the value of the deeds as evidence of title, but
was whether they were void.   In the cases we have review-

ed at such length, we have endeavored to show they were held void, and for what reasons they were so held. As before stated, there is some language used in some of these opinions in conflict with the conclusion we have reached, but we do not think the decisions themselves are in conflict with it. In the opinion in *Hoffman* v. *Loud*, ante, 5, the following statement is made:

" It should not be forgotten that the land was sold to the State at least four times before the passage of Act No. 7. Its title under each of its sales when it was obtained was prima facie valid."

The first part is a correct statement of facts. The last sentence is not a correct statement of the law, and should be overruled. The statute refers to deeds, and not to the state of the title before the deeds are issued. The other questions suggested have been considered, but we do not deem it necessary to discuss them.

Judgment is affirmed.

CARPENTER, MCALVAY, GRANT, BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.